UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60890-Civ-ZLOCH
(06-60344-Cr-ZLOCH)
MAGISTRATE JUDGE P.A. WHITE

JOHNNY OLBEL,                       :

      Movant,                   :

v.                                  :       **REPORT OF MAGISTRATE JUDGE**
                                            **RECOMMENDING THAT §2255 MOTION BE**
UNITED STATES OF AMERICA,:          **DENIED, IN PART, AND GRANTED, IN PART**

      Respondent.               :
_____

## I   INTRODUCTION

Johnny Olbel has filed a _pro se_ motion to vacate pursuant to
28 U.S.C. §2255, attacking his convictions and sentences entered
following a jury verdict in Case No. 06-60344-Cr-Zloch, on Count 1,
possession with intent to distribute 5 grams or more of crack
cocaine, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B),
and Count 2, felon in possession of a firearm, in violation of 18
U.S.C. §922(g)(1), as charged by Superseding Indictment.

This case has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in
the United States District Courts.

The Court has for its consideration the initial §2255 motion
(Cv:DE1) and memo (Cv:DE2) raising 3 grounds for relief; the gov-
ernment's Response (Cv:DE14) and Ex.A, the Appellee's Brief from
Movant Olbel's direct appeal [USCA #07-14175-J] (Cv:DE14-1); Mov-
ant's Response (Cv:DE10) to an Order (Cv:DE5) requiring him to ad-
dress the issue of timeliness of his motion; Movant's "Motion to
Amend" with exhibits (Cv:DE15) which for purposes of this Report is
treated as an Amendment raising 3 additional/supplemental grounds
for relief. The Court also has considered the PSI prepared in 2007,
an Addendum thereto, and the Court's SOR; and pertinent portions of
the record in Movant's criminal case [06-60344-Cr-Zloch].

Movant Olbel's asserted grounds for relief, as framed in his Motion (Cv:DE1) and Amendment (Cv:DE15) are as follow, *verbatim*:

### *(Claims in Initial §2255 Motion, Cv:DE1)*

1.   **The defendant has standing to object to the search of the car in his possession // Defense counsel failed to protect the petitioner's fourth amendment Rights.**

2.   **The government never proved that Johnny Olbel, had actual or constructive possession of a firearm or that Olbel, affected interstate commerce** [and Olbel asserts that the claim was not raised on appeal due to counsel's ineffective assistance].

3.   **The governments evidence is wholly insufficient to support the conviction in both counts. the conviction violates the 5th and 6th amendments** [and Olbel asserts that the claim was not raised on appeal due to counsel's ineffective assistance].

### *(Claims in the Amendment to §2255 Motion, Cv:DE15)*

1.   **INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO SUCCESSFULY** [sic] **ARGUE PETITIONER'S MOTION TO SUPPRESS THE EVIDENCE.**

     [Here, Movant claims that the officer's reason for "stopping" him was "not based on reasonable articulated suspicion;" that there was an "illegal seizure of [his] person;" and that if counsel had properly argued his motion to suppress, the evidence which was seized would have been suppressed].

2.   **Failure to Comply with Section 851.**

     [The essence of this claim is that the "*Information and Notice of Government's Intention to Rely Upon Prior Narcotics Convictions as Grounds for Increased Punishment*" (Cr:DE48, filed 6/6/2007) has

a type-written signature of the government attor-
ney; and Movant, citing <u>Becker v. Montgomery</u>, 532
U.S. 757 (2001), argues that "that typewritten
signature does not satisfy the rule regarding
pleadings (under rule 11) civil procedure."].

3. **In light of the recent decision by the U.S. Supreme
Court <u>Johnson vs. United States</u> 130 S.Ct. 1265
(2010) the petitioner is actual innocent of the en-
hancement under 4B1.1 guideline provision.** [Movant
also cites "<u>Gilbert v. United States</u>, 2010 U.S.
App.Lexis 12693 no 09-12513 (June 21, 2010 11th
cir." ].

## II   <u>PROCEDURAL HISTORY</u>

Olbel was charged by Indictment on 12/26/2006 (Cr:DE1), and
arraigned on 3/9/2007 (Cr:DE12), and he filed a Motion to Suppress
on 4/26/2007 (CR:DE25) upon which an evidentiary hearing was held
on 5/29/2007 (Transcript, Cr:DE47). The Superseding Indictment
charging the two counts on which Olbel was convicted was returned
as a True Bill, and was filed on May 8, 2007. (CR:DE31). Olbel was
re-arraigned on 5/10/2007 (Cr:DE34); and his jury trial commenced
on 6/12/2007 and concluded on 6/13/2007.

At trial, Olbel was convicted as charged on Counts 1 and 2 of
the Superseding Indictment: [<u>Count 1</u>, possession with intent to
distribute 5 grams or more of crack cocaine, in violation of 21
U.S.C. §§841(a)(1) and 841(b)(1)(B), and <u>Count 2</u>, felon in
possession of a firearm, in violation of 18 U.S.C. §922(g)(1)].

In a 6/14/2007 Notice, sentencing was set for 8/24/2007, and
was later reset for 8/28/2007. (Cr:DEs 67, 86). In the interim, a
PSI, available for disclosure on 7/18/2007, was prepared. Olbel's
objections to the PSI were filed on 8/1/2007 (Cr:DE84).

As part of the relevant Offense Conduct, the PSI noted that
the parties had entered into a stipulation regarding the net weight

of drugs seized [2 grams of cannabis; 0.3 grams of cocaine powder; and 16.2 grams of cocaine base/crack cocaine] (See PSI ¶8). As part of the Offense Level Computation (PSI ¶¶12-21), the probation officer determined that offenses charged should be grouped together as provided by USSG §3D1.2(c) (see PSI ¶12) and proceeded to determine the initial base offense level, pursuant to USSG §2D1.1(a)(3), which is the guideline for violation of 18 U.S.C. §841(a)(1). The marijuana, powder cocaine, and cocaine base, having been converted to their combined marijuana equivalent [of "at least 100 kilograms but less than 400 kilograms of marihuana"], rendered, a base offense level of 26.[1] (See PSI, ¶26).

Then, because a dangerous weapon (which includes a firearm) was possessed, the offense level was increased by two levels pursuant to §2D1.1(b)(1). Accordingly, Olbel's Base Offense Level of 26 [predicated on the drug quantities] was adjusted upward to 28.

The probation officer then determined, based on the state of the law, that Olbel qualified as a Career Criminal pursuant to USSG

---

[1]    The Base Offense Level chart located under §2D1.1 at USSG Chapter 2 - Part D, provides that for "At least 100 KG but less than 400 KG of Marijuana" the Base Offense Level is 26.

The Drug Equivalency Tables located under §2D1.1, at USSG Chapter 2 - Part D, are used to convert weights of various drug types to "Marihuana" equivalents.

Simple calculations, using the stipulated weights of drugs referenced at PSI ¶8 (i.e., 16.2 g of Cocaine Base [crack]; 0.3 g of powder cocaine; and 2 g of cannabis), and then referring to Drug Equivalency Tables located under USSG §2D1.1, show how Olbel's Base Offense Level of 26 would have been determined.

It is apparent, from such calculations, that it was the 16.2 gram quantity of crack cocaine attributed to Olbel which caused him to fall into Base Offense Level 26, and that the small quantities of powder cocaine and cannabis attributed to him had a negligible effect on the calculations. (The 16.2 grams of cocaine base (a/k/a "crack") converts to an equivalent of 324 KG of "marihuana" [1 gram of cocaine base under 2006 Guidelines being equivalent to 20 KG of "marihuana"]; the 0.3 grams of powder cocaine converts to an equivalent of 60 grams (= 0.060 KG) of "marihuana" [1 gram of powder cocaine being equivalent to 200 grams of "marihuana];" and 2 grams of "cannabis" converts to an equivalent of 2 grams (= 0.002 KG) of "marihuana" [1 gram of cannabis being equivalent to 1 gram of "marihuana"]. Their sum would be equivalent to 324.062 Kg of "marihuana," which falls within the aforementioned 100 - 400 KG Range).

§4B1.1(a),[2] because he was at least 18 years of age at the time of his federal offenses, which included a felony controlled substance violation, and Olbel had at least two prior qualifying felony convictions [from the Seventeenth Judicial Circuit of Florida, at Broward County]. The first matter listed as a qualifying prior conviction was a 12/20/2002 conviction for "Battery on a Law Enforcement Officer" in Broward Case 02-18089-CF10A (see PSI p.6 ¶19 and p.10 ¶32). [Note: as discussed further, below, this is the conviction which is the subject of the third ground raised in the Movant Olbel's Amendment at Cv:DE15, p.4]. The second matter listed

---

[2]    USSG Section 4B1.1, captioned "Career Offender," provides, in pertinent part, as follows:

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

|     | Offense Statutory Maximum | Offense Level |
|-----|---------------------------|---------------|
| (A) | Life | 37 |
| (B) | 25 years or more | 34 |
| (C) | 20 years or more, but less than 25 years | 32 |
| (D) | 15 years or more, but less than 20 years | 29 |
| (E) | 10 years or more, but less than 15 years | 24 |
| (F) | 5 years or more, but less than 10 years | 17 |
| (G) | More than 1 year, but less than 5 years | 12. |

as a qualifying prior conviction was a 2/24/2004 conviction for "possession of a controlled substance with intent to sell/deliver within 200 feet of a park" in Broward Case No. 03-18045-CF10A (see PSI at p.6 ¶19 and p.12 ¶36).[3]   The Battery conviction from Case 02-18089-CF10A, treated as a "crime of violence," was deemed a qualifying prior conviction under the definition in §4B1.1(a); and the "possession...with intent" conviction from Case 03-18045-CF10A, treated as a "controlled substance offense," likewise was deemed a qualifying prior conviction for purposes of §4B1.1(a).

Having determined that Olbel qualified for Career Offender status under §4B1.1(a), his Total Offense Level did not remain the same as his Adjusted Offense Level (i.e. Level 28). This is because §4B1.1(b), at USSG "Chapter Four - Part B - Career Offenders and Criminal Livelihood," includes an Offense Level "Table." Section 4B1.1(b) provides [see footnote 2 supra] that if the defendant's offense level which otherwise would be applicable is less than that determined by reference to the Offense Level "Table" set out at §4B1.1(b), then "the offense level from the table in this subsection shall apply." Offense Levels in the §4B1.1(b) "Table" are determined by reference to the "Offense Statutory Maximum" for the offense(s) of which the defendant was convicted. In Olbel's case, the possible Statutory sentence for the offense in Count 1 was 10 years to Life, (see PSI ¶80; and 21 U.S.C. §§841(b)(1)(B) and 851).[4] The Table at Section 4B1.1(b) indicated that Olbel's Offense Level [corresponding to a statutory maximum Life sentence] should

---

[3]      The PSI at p.12, ¶36, correctly lists 2/24/2004 as the date of conviction for the "possession with intent" offense in Case 03-18045-CF10A. Paragraph 19 at p.6 of the PSI contains a scrivener's error referring to this same conviction as having occurred on December [sic] 24, 2004, rather than the correct date of February 24, 2004.

[4]      Where Olbel's federal offense in Count I involved 5 grams or more of a mixture or substance containing detectable amounts of cocaine base, his statutory sentence under 21 U.S.C. §841 would have been [without prior conviction for a "felony drug offense"] 5 to 40 years imprisonment. Because he had a prior conviction for a felony drug offense, his statutory range for a term of imprisonment was enhanced under 21 U.S.C. §841(b)(1)(B) to 10 years to Life.

6

be an Offense Level of 37, rather than 28 as would otherwise have been applicable.

Olbel was found to qualify for a Criminal History Category of "VI" on two separate grounds. First, based on numerous prior convictions listed in the PSI (see PSI ¶¶23-39). The PSI showed assessment of 12 Criminal History Points; but at Sentencing counsel's argument that only 11 points should be assessed was persuasive.[5] This, however, would not change the Criminal History Category, because the points assessed for prior qualifying [state] convictions, were to be augmented by 2 additional Criminal History Points pursuant to §4A1.1(c), since Olbel's federal offense(s) [committed on 11/8/06, the date of his arrest] were committed less than two years after his release from state custody on 5/17/2006 following his convictions in Broward Case 03-13715-CF10A (see PSI ¶35) and Broward Case 03-18045-CF10A (see PSI ¶36). A total of either 13 or 14 Criminal History Points corresponds to Criminal History Category "VI." (See horizontal scale at the top of the USSG Chapter Five "SENTENCING TABLE;" and see PSI ¶42). Alternatively, Olbel also was determined to qualify for a Criminal History Category VI because, as provided under USSG §4B1.1, "a career offender's criminal history category in every case under this subsection shall be Category VI." (See PSI ¶42; and see USSG §4B1.1(b)).

Based on a Criminal History Category of VI, and the Total Offense Level of 37, the Chapter Five Sentencing Table rendered, in Olbel's case, an advisory sentencing guidelines range of "360-life" (360 months to Life). (See PSI ¶81).

---

[5]     In writing (Cr:DE84, Objections to PSI), and at sentencing (Cr:DE103, T/9-14), Olbel, through counsel challenged the 1 point assessed in PSI ¶38 for a 1/26/2004 conviction for Trespass and Resisting Without Violence, where Olbel had served no jail time, and similar offenses in PSI ¶¶34 and 37 were assessed no points. At sentencing, after discussion between the Court, Defense Counsel, Defendant Olbel, Government Counsel, and a Probation Officer, it was conceded that even without the 1 point from PSI ¶38, Olbel would still have enough Criminal History Points to qualify for Criminal History Category VI.

On August 28, 2007, the Court sentenced Olbel at the bottom of the guidelines, to concurrent terms of imprisonment of 360 months on Count 1, and 120 months on Count 2; and sentenced Olbel to 8 years of supervised release on Count 1 and 3 years of supervised release on Count 2, to be served concurrently. (See Cr:DEs 88 [minutes], 91 [Judgment], and 103 [sentencing transcript]. On August 28, 2007, the Court also entered a written Order (Cr:DE90) denying the Movant's Motion to Suppress Evidence (Cr:DE25).

On August 31, 2007 Olbel appealed (Notice, Cr:DE92), and the appeal was assigned USCA #07-14175 (see Cr:DE105). A copy of Olbel's Initial Brief of Appellant is available at 2007 WL 4451964; and the Government's Answer Brief, also available on Westlaw at 2007 WL 5473059, is filed in this case with the Response (at Cv:DE14-1). The Issues raised by counsel on Olbel's behalf on appeal, as framed in the Appellant's Brief, were:

> 1. The district court erred when it ruled that defendant lacked standing to challenge stop on Fourth Amendment Grounds.
>
> 2. The district court erred when it ruled that the officers' search of defendant's vehicle was a valid search incident to arrest.
>
> 3. The district court erred when it entered a final judgment of guilt and sentence based on the evidence presented at trial.
>
> 4. The court [sic] sentence of the defendant for possession of crack cocaine is unconstitutional defendant lacked standing to challenge stop on Fourth Amendment Grounds

(Brief of Appellant, 2007 WL 4451964). The Eleventh Circuit discussed issues 1 and 2 together, and framed Olbel's claims as follows: (1) "Olbel first contends that the district court erred in denying his motion to suppress the evidence of drugs and the firearm that were found in his vehicle when he was arrested"

8

(Cr:DE109, p.4); (2) "Olbel also contends that he is entitled to a new trial because the government failed to provide him access to potentially exculpatory evidence as required by <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963)" (Cr:DE109, p.5); and (3) "Olbel also contends that his sentence was 'unconstitutional' in light of the disparity between sentences for possession of powder cocaine and crack cocaine" (Cr:DE109, p.6, n.1). On May 1, 2008, the Eleventh Circuit, reaching all but Olbel's last claim,[6] affirmed Olbel's convictions and sentences, <u>United States v. Olbel</u>, No. 07-14177, 275 Fed.Appx. 910, 2008 WL 1914334 (11 Cir. 2008). (<u>See</u> Cr:DE109). Mandate issued on July 31, 2008 (Cr:DE109). Rehearing was denied on July 22, 2008, <u>see</u> <u>United States v. Olbel</u>, No. 07-14177-JJ, 285 Fed.Appx. 743 (2008) (table).

On June 5, 2009 the Movant's §2255 Motion (Cv:DE1) and his Supporting Memorandum (Cv:DE2), which are considered to be together a single document, were filed,[7] less than a year after Olbel's conviction became final. The government has conceded that Olbel's initial §2255 motion (Cv:DEs 1, 2) is timely. (Response, Cv:DE14 at p.2). There was no Order to Show Cause for a Response to the claims raised in Movant Olbel's Amendment.

---

[6]     The Court of Appeals declined to reach the powder/crack cocaine disparity issue, holding that Olbel's contention was abandoned, "by only mentioning it in passing, and providing no citations to any authority to support his argument." (Cr:DE109, p.6, n.1).

[7]     It is well settled that the date when a <u>pro se</u> prisoner's pleading is file stamped at the court is not the filing date. Rather, under the "mailbox rule," an inmate's/prisoner's submission is deemed "filed" on the date it is put in the hands of jail/prison officials for mailing, as evidenced by the inmate/filer's certificate of service attached to the filing. <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988); <u>Garvey v. Vaughn</u>, 993 F.2d 776 (11 Cir. 1993).

Olbel's "Motion" (scanned at Cr:DE126 and Cv:DE1) is unsigned. However, it is clear that it was submitted together with his "Supporting Memorandum" (scanned only at Cv:DE2) which is signed and dated 6/5/2009, and was apparently separated for docketing upon arrival at the Court. The two filings are for purposes of this proceeding deemed to be one document, and the signature reflected on the last page of the Memo is deemed to be that which is required for compliance under the Rules of Procedure. Although the Motion and Memo were stamped by the Clerk on 6/16/2009, they are deemed to have been filed on 6/5/2009, the date next to Olbel's signature (Cv:DE2 at p.37).

### III   <u>DISCUSSION</u>

To the extent that among his asserted grounds for relief the Movant Olbel has made assertions of ineffective assistance of counsel, his claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to the movant, <u>see Massaro v. United States</u>, 538 U.S. 500, 505 (2003). To prevail, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the movant/defendant. <u>Chandler v. United States</u>, 218 F.3d 1305, 1312-13 (11 Cir. 2000)(<i>en banc</i>), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001); <u>Strickland</u>, <u>supra</u>. A habeas court's review of a claim under the <u>Strickland</u> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___U.S.___, ___129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" <u>Id</u>. at 1314 (<u>quoting</u> <u>Strickland</u>, <u>supra</u>, 466 U.S. at 689-90.

Trial and appellate counsel have no duty to raise defenses, objections or issues having little or no chance of success. <u>See</u> <u>Knowles</u>, <u>supra</u>, 129 S.Ct. at 1422 (counsel not required to raise every available non-frivolous defense); <u>Owens v. Wainwright</u>, 698 F.2d 1111, 1113-1114 (11 Cir.1983)(counsel not ineffective for failure to file motion to suppress having little chance of success); <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11 Cir.2001) (counsel not ineffective for failing to raise non-meritorious objection); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir.1990)(appellate counsel is not required to raise meritless issues); <u>Matire v. Wainwright</u>, 811 F.2d 1430 (11 Cir.1987)(same). Bare, conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of

reliability, are insufficient to require a hearing or further consideration. United States v. Robinson, 64 F.3d 403, 405 (8 Cir.1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir.1983), United States v. Ammirato, 670 F.2d 552 (5 Cir.1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir.1979).

### A. Claims Attacking Convictions
### Ground 1 (Initial Motion Cv:DEs 1, 2)

In ground 1 of his initial Motion (Cv:DE1), Movant Olbel argues that counsel failed to protect his Fourth Amendment rights, where he "had standing to object to the search of the car in his possession." He complains that counsel, rather than arguing that he had possession, dominance and control over the vehicle, and there-fore had standing to challenge its search, instead attempted to prove that many other people had access to the vehicle. (Cv:DE2 at pp. 13-20). The Movant states/argues his belief that if counsel had raised the argument that he had standing to challenge the search of the vehicle, and had prevailed on that argument, then the outcome of his criminal proceedings would have been different.

This claim is without merit. The Court's written Order denying Olbel's Motion to suppress (Cr:DE90) addressed standing, and deter-mined that Olbel failed to demonstrate he had a reasonable expectation of privacy in the vehicle, and that he lacked standing to move to suppress, having noted that there was no evidence that Olbel co-owned the vehicle with the registered owner, or that he shared the vehicle with the owner on a regular and recurring basis so as to form an expectation of privacy in the same. The Court further noted that, even taking government evidence, which Olbel had refuted, in favor of Olbel's burden there was still insuffi-cient evidence to establish that Olbel had legitimate expectation of privacy in the vehicle. The officers had merely seen Olbel park it, and there was no testimony as to the extent of the use and control over the vehicle that Olbel was able to maintain. (Order,

Cr:DE90 at pp.3-7). The Court, in the alternative, determined that the officers had searched the car incident to arrest, and that the search was lawful. (Id., pp.7-9).

In Movant's direct appeal, the Eleventh Circuit, in addressing Olbel's claim that the district court erred in denying his motion to suppress the evidence of drugs and the firearm that were found in the vehicle when he was arrested, affirmed the trial court's denial of the motion to suppress on the alternative ground articulated in the Court's Order, i.e., that the vehicle search was a lawful warrantless search incident to arrest. (Cr:DE109, pp.4-5; United States v. Olbel, No. 07-14177, 275 Fed.Appx. 910, 910-11 2008 WL 1914334, at *1 (11 Cir. 2008). In rejecting that claim, the Eleventh Circuit specifically stated:

> The district court did not err in determining that the search of Olbel's car was a lawful search incident to his arrest. The court's findings that Olbel was arrested almost immediately after exiting his vehicle and that the officers approached him when he was within close physical proximity to it are supported by the testimony and not clearly erroneous. The arresting officers also testified that they saw Olbel with marijuana in plain sight before they approached him and that one of them knew from his earlier contact with Olbel that he had a suspended driver's license. There was no Fourth Amendment violation.

(Cr:DE109, pp.4-5; Olbel, supra, 275 Fed.Appx. at 911). Where the trial and appellate courts both determined that the search was a legal search incident to arrest, Olbel cannot show that failure of counsel at the trial court level, or on appeal, to argue the alternative theory [that Olbel allegedly had standing to challenge the search] would have resulted in suppression of the drugs and/or gun attributed to him, thereby making a difference in the outcome of his criminal proceeding. See Strickland, supra; Knowles, supra, 129 S.Ct. at 1422; Owens, supra, 698 F.2d at 1113-1114; Chandler, supra, 240 F.3d at 917; Card, supra, 911 F.2d at 1520.

## <u>Ground 2</u>: (Initial Motion, Cv:DEs 1, 2)

Movant Olbel argues the government failed to prove he had actual or constructive possession of a firearm, and that interstate commerce was affected.  The government responds that the issue was not raised in the trial court or on appeal, and that Olbel therefore is barred from raising it here. Olbel has argued the claim was not raised below due to ineffectiveness of counsel.

Generally, a claim not raised in the trial court, or on direct appeal, is procedurally barred from review in a collateral proceeding such as this unless the movant can show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice, <u>Engle v. Isaac</u>, 456 U.S. 107 (1982). Constitutionally ineffective assistance of counsel can constitute cause. <u>Holladay v. Haley</u>, 209 F.3d 1243, 1254 (11 Cir. 2000); <u>Hollis v. Davis</u>, 941 F.2d 1471, 1476 (11 Cir.1991), <u>citing</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance under the test enunciated in <u>Strickland</u>, so as to have affected the outcome of the proceeding. <u>Murray v. Carrier</u>, <u>supra</u>, 477 U.S. at 488.

Here, Movant Olbel cannot prevail. At jury trial he was convicted of firearm possession. The Court gave proper jury instructions concerning Count II, which included instruction about actual possession [stating in pertinent part that "a person who knowingly has direct physical control of something is then in actual possession of it"], and instruction about constructive possession [stating in pertinent part that "a person who is not in actual possession, but who has both the power and intention to later take control over something either alone or together with someone else, is in constructive possession of it"]. The instructions on Count 2 also provided that "The term 'interstate commerce' includes the movement of a firearm between any place in one state and any place

13

in another state. It is not necessary for the Government to prove that the Defendant knew that the firearm had moved in interstate commerce before the Defendant possessed it, only that it had made such movement." (Cr:DE63, pp. 11, 12). As to Count 2, the government clearly met its burden at trial. Olbel was arrested almost immediately after he was seen exiting the vehicle. Officers Gonzalez and Garcia testified that they saw him park a Saturn, lock it, and start walking away from the car toward a group of people. (Cr:DE99, T/69-70, 128-29). Garcia approached the vehicle, with flashlight in hand, and saw through the window that the center armrest/console was partly open. (Cr:DE99, T/75-77, 107-08). After his arrest [as noted above, the initial arrest was for throwing down a baggie containing cannabis; and driving with a suspended license], a pat-down of Olbel resulted in recovery of cell phones and keys for the Saturn that Olbel was seen exiting (Cr:DE99, T/74-75, 133-34). A search of the car, which Olbel had locked, revealed that the firearm that was in view in the partially open center compartment was a loaded 9mm *Taurus* pistol; and the console and the weapon sticking out of it, were photographed. (Cr:DE99, T/76-77, 78, 87-88, 136-38, 141-42). The government also established through testimony of Robert W. Shirley, III, an ATF firearms expert, that the pistol recovered from the Saturn was manufactured in Brazil, and therefore had traveled in interstate commerce. (Cr:DE99, T/179-83, 186-91).

Where the evidence was sufficient to establish that Olbel had had control over the car in which the pistol was observed and from which it was soon thereafter retrieved, after Olbel had locked the car and put the car keys in his pocket, and where the evidence was sufficient to establish that the pistol was manufactured in Brazil but seized in Florida, it is apparent that Olbel could not have prevailed on a claim of insufficiency of the evidence, and counsel therefore cannot have been ineffective for not arguing that the government failed to prove Olbel had at least constructive possession of the weapon and that it had traveled in interstate commerce. This ground therefore fails. It is both barred, and without merit.

### Ground 3: (Initial Motion, Cv:DEs 1, 2)

In the third ground of his initial motion, the Movant argues that, as to both counts of the superseding indictment, the government's evidence was insufficient to sustain a conviction. As with ground 2, the government has argued the claim is barred, having not been raised on appeal, and the Movant, as he did with Ground 2, contends in his motion, when setting out ground 3, that the claim was not raised due to counsel's ineffectiveness.

As discussed above, the claim that the government failed to prove its case on Count 2 is barred, and meritless. For the reasons discussed below, the same is true with regard to Count 1.

While Olbel contends in his motion that "there is no factual evidence nor any testimonial statements at trial that Johnny Olbel, was selling any narcotics during or at the time of his arrest by police," the evidence adduced at trial clearly was sufficient to sustain a conviction on Count 1. The officers' testimony establish-ed that after Olbel had already been arrested for possessing marijuana/cannabis [having been seen throwing down the baggie containing it after he got out of the car and locked it], the subsequent inventory of the car further revealed that by the gun there was a bag containing cocaine rocks (Testimony of Officer Garcia, Cr:DE99, T/77-78; Testimony of Officer Gonzalez, Id. at T/136-37). The defense and government stipulated that the baggie with Cannabis contained 2 grams of the drug, that the baggie containing cocaine base/"crack" contained 16.2 grams of the drug, and that a separate baggie contained 0.3 grams of powder cocaine. (See Cr:DE99, T/79-81). The inventory search of the car resulted in recovery of cell phone chargers for the cell phones found on Olbel, as well as business cards [3 for a "Mobile Car Wash," and 3 for "Tax One"] all with the name "Jay" and a phone number written on the back. From his own phone, Officer Gonzalez called the number on the back of one of the cards, and he personally observed that one

of the cell phones recovered during the pat down of Olbel rang in response. Gonzalez testified that he had seen such business cards before, and that based on his extensive experience, which included working undercover and making hundreds of arrests for narcotics offenses, such cards are commonly used by individuals selling narcotics. The card is customarily given to someone on the street, the person given the card calls the number, and an arrangement is made to meet somewhere else. In that way, the individuals avoid making a transaction on a corner where police might be watching. In addition, Officer Gonzalez testified that the amount of crack cocaine involved in the seizure in Olbel's case (approximately 16 grams) was, based on his [Gonzalez's] training and experience, in excess of a quantity for personal use, and was indicative of "street level narcotics sales." (Cr:DE99, T/82-84, 134-36, 138-44).

This evidence clearly was sufficient for a reasonable jury to find Olbel guilty of possession with intent to distribute 5 grams or more of crack cocaine, as charged, where the evidence showed: the crack was found in a locked car, which Olbel had exited, for which Olbel had the keys; the officer's call to a number hand-written on the back of a business card typical of the kind used by drug dealers caused a cell phone found in Olbel's possession to ring; and the crack cocaine seized from the car Olbel had gotten out of exceeded the amount that would generally be in a person's possession for personal use. As is true for ground 2, the claim in Ground 3 therefore fails. It is both barred, and without merit.

### Ground 1: (Amended Motion, Cv:DE15)

In the first claim asserted in his Amendment (Cv:DE15), Movant Olbel asserts [as he had in ground 1 of the initial §2255 motion] that Counsel was ineffective for failing to successfully argue his motion to suppress. In the instant ground of the amendment, the Movant expands upon his claim of ineffectiveness in relation to the suppression motion, this time arguing that the officer's reason for

16

"stopping" him was "not based on reasonable articulated suspicion;" that there was an "illegal seizure of [his] person;" and that if counsel had properly argued his motion to suppress, the evidence which was seized would have been suppressed.

This new/amended claim, raised in a pleading signed by the Movant on 8/31/2010, could be said to be time-barred. It was raised well beyond the one year federal limitations period.[8] The Movant's conviction became final at the latest ninety days after his conviction was affirmed on May 1, 2008 by the Eleventh Circuit (see Olbel, supra, 275 Fed.Appx. 910, 2008 WL 1914334).[9] Here, however,

---

[8]    A Movant is required to file his §2255 motion within one year from the time the judgment became final. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986).

Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one year period of limitations applies to a motion under the section, and it runs from the latest of:

(1)   The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(2)   The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;

(3)   The date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   The date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

[9]    The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002).

Ordinarily, where a federal criminal defendant files no appeal, his conviction becomes final 10 days after it is entered. See Mederos v. United States, 218 F.3d 1252, 1253 (11 Cir. 2000); Fed.R.App.P. 4(b)(1)(defendant's notice of appeal in a criminal case must be filed in the district court within 10 days after entry of the district court's judgment). However, where a direct appeal has been filed, the movant's conviction will be come final after judgment is entered by a United States court of appeals, and the 90 period for filing a writ of certiorari has expired. That 90 day time period runs from the date of entry of the

17

the matter will be reviewed, since arguably the claim arises from the same set of circumstances as the related claim raised in Ground 1 of the original §2255 motion. <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644 (2005)[10] and <u>Davenport v. United States</u>, 217 F.3d 1341 (11 Cir. 2000);[11] <u>see also</u>, <u>Dean v. United States</u>, 278 F.3d 1218, 1222 (11 Cir. 2002) (for an untimely claim to be considered, it must arise from the same facts as the timely filed claim, not from separate conduct or occurrence); <u>Pruitt v. United States</u>, 274 F.3d 1315, 1319 (11 Cir. 2001)(untimely claims must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings)(<u>citing</u>, <u>United States v. Pittman</u>, 209 F.3d 314 (4 Cir. 2000); <u>United States v. Duffus</u>, 174 F.3d 333 (3 Cir.), <u>cert. den'd</u>, 528 U.S. 866 (1999); <u>United States v. Craycraft</u>, 167 F.3d 451 (8 Cir. 1999)).

It is clear that this supplemental allegation of counsel's failure to properly articulate/argue the suppression motion in Movant's underlying criminal case fails.  The evidence in the case, as reflected in the trial transcript, and discussed by the Court in

---

judgment rather than the issuance of a mandate.  <u>Sup.Ct.R</u>. 13; <u>see Clay v. United States</u>, 537 U.S. 522, 532 (2003)("[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, 2255's one-year limitation period starts to run when the time for seeking such review expires"); <u>see also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

[10]In <u>Mayle</u>, the Supreme Court held that "[A]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those in the original pleadings set forth." <u>Mayle</u>, 125 S.Ct. at 2566. The Supreme Court explained that relation back is only allowable "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." <u>Id</u>. at 2571 (citations omitted).

[11]In <u>Davenport</u>, the Court of Appeals held that a claim which was not part of the original timely motion to vacate does not relate back to the original claims and is time-barred if it does not arise out of the same conduct, transaction or occurrence. However, in a post-<u>Davenport</u> decision, the Eleventh Circuit explained that "[W]hen the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim." <u>United States v. Dean</u>, 278 F.3d 1218, 1221-1222 (11th Cir. 2003).

its Order denying the suppression motion after the trial was concluded, makes clear that there was reasonable articulable suspicion for an officer to stop and arrest Movant Olbel, even before the search of the vehicle which was incident to arrest. (The trial court, in denying Olbel's Motion to Suppress, noted, in addition to testimony of Officers Garcia and Gonzalez that they saw Olbel back the vehicle [in which the gun an the crack and powder cocaine were later found] into a parking space and get out, Detective Gonzalez testified he had prior dealings with Olbel and had knowledge that Olbel's driver's license was revoked, and both officers testified that as they began to approach Olbel after his exit from the vehicle they saw him drop a small baggie of cannabis, and that based on the above Olbel was arrested for driving with a revoked license, and drug possession. [See Order, Cv:DE90]). As noted in the Appellate Court's opinion affirming Olbel's conviction, the district court did not err in determining that the search of Olbel's car was a lawful search incident to arrest, because the trial court found that Olbel was arrested almost immediately after exiting his vehicle; and because the trial court's findings that officers approached him when he was within close physical proximity to the car were "supported by the testimony and not clearly erroneous." In reaching that finding, the Court of Appeals noted that the arresting officers testified that "they saw Olbel with marijuana in plain sight before they approached him" and that "one of them knew from his earlier contact with Olbel that he had a suspended driver's license;" and the Appellate Court concluded "There was no Fourth Amendment violation." (Cr:DE109, pp.4-5; Olbel, supra, 275 Fed. Appx. at 911). Findings of fact and conclusions by the trial court and the Eleventh Circuit with regard Olbel's motion to suppress make clear that, even if Counsel had articulated an additional argument for suppression [as framed in ground 1 of Olbel's Amended §2255 motion], there is no reasonable possibility that the defense could have prevailed on the motion. Accordingly, counsel cannot be said to have been ineffective for failing to raise the additional argument which Olbel here contends should have been included in

support of the motion to suppress, where a motion including the ar-
gument would have had little or no chance of success, <u>Owens v.
Wainwright</u>, <u>supra</u>, 698 F.2d at 1113-14; <u>Chandler v. Moore</u>, <u>supra</u>,
240 F.3d at 907. <u>Cf</u> <u>Card v. Dugger</u> and <u>Matire v. Wainwright</u>, <u>supra</u>.

### B. <u>Claims Constituting Attack(s) on Sentence</u>

#### <u>Ground 2</u>: (Amended Motion, Cv:DE15)

In this asserted ground, Movant Olbel, by claiming that the
government did not properly sign it's Notice of its intent to rely
upon prior narcotics convictions as grounds for increased punish-
ment, attempts to undermine the reliance in his case on prior con-
victions, pursuant to which the statutory sentence on Count 1 was
enhanced [to a term of "not less than 10 years and not more than
life imprisonment"] from what [in the absence of prior conviction
for a felony drug offense] would otherwise have been a statutory
"term of imprisonment which may not be less than 5 years and not
more than 40 years." <u>See</u> 18 U.S.C. §§841(a)(1), and 841(b)(1)(B).

In the interest of judicial economy, discussion about whether
this ground is untimely, and whether it relates back to the filing
of the initial petition, will be foregone.

Movant Olbel's claim/contention that the signature on the
Government's "851 Notice" (Cr:DE48) is not compliant with the Rules
of Procedure, is frivolous. Olbel cites <u>Becker v. Montgomery</u>, 532
U.S. 757 (2001) for its holding that a type-written signature does
not satisfy <u>Fed.R.Civ.P.</u> 11's signature requirement. His claim
ignores that fact that, while Rule 11(a) requires every pleading
and other paper to be signed by at least one attorney of record,
the federal Courts now rely on electronic filing of documents.
Here, the government's Notice (CR:DE48) was electronically filed;
and it was signed with the typed signature "s/ Patricia L. Diaz
Assistant United States Attorney." <u>Id.</u> p.3. The notation "s/"
before the typed signature of AUSA Diaz constitutes a proper

signature. <u>See</u> the Administrative Procedures adopted for use in this District for "Case Management Electronic Case Filing CM/ECF," which under "Section 3 - USER INFORMATION AND RESPONSIBILITIES," provide that "[a] document filed electronically, requiring an attorney's signature, shall be signed according to the format below. An 's/' signature has the same for and effect as an original signature." (<u>See</u> this District's CM/ECF Administrative Procedures, at Section 3, ¶3J.(1), captioned "Attorney's Signature Block").

### <u>Ground 3: (Amended Motion, Cv:DE15)</u>

Finally, there is Movant Olbel's claim in Ground 3 of his amendment (Cv:DE15), asserting that he is "actually innocent" of the Section 4B1.1 sentencing enhancement in his case. Olbel relies, in pertinent part, on <u>Johnson v. United States</u>, __ U.S. __, 130 S.Ct. 1265 (2010), which was decided on 3/2/2010. Olbel's Amendment (Cv:DE15) is dated 8/31/2010, less than 6 months after the Supreme Court's decision in <u>Johnson</u>. As such it appears that this claim, which is based on a new Supreme Court ruling, is timely, and it is treated as such for purposes of this discussion.

The essence of this ground/claim is Olbel's contention that his underlying state conviction in Case 02-18089-CF10A, for simple Battery on a LEO, does not, in light of the March 2010 decision in <u>Johnson</u>, qualify as one of the two predicate offenses necessary for enhancement of his Adjusted Offense Level under USSG §4B1.1(a). (<u>See</u> Discussion, <u>supra</u>, at footnote 2 and related text).

It appears that without the state conviction for Battery [referenced in the PSI at ¶¶19 and 32], which was counted in July/August 2007 as a "violent felony" and therefore a predicate offense under USSG §4B1.1(a), Movant Olbel would be left with only one qualifying conviction [the 2/24/2004 conviction listed at PSI ¶¶ 19 and 36, for the "controlled substance offense" of "Possession with Intent to Sell (Cannabis) Within 200 Feet of a Park"].

If the "Battery" [at PSI ¶¶32, 19] were deemed not to be a predicate conviction for "Career Offender" status under §4B1.1(a), it appears that Olbel's statutory minima/maxima for his possession with intent offense [Count 1, in violation of 21 U.S.C. §§841(a)(1) and 851], and for his firearm offense [Count 2, in violation of 18 U.S.C. §922(g)], would remain unchanged. Olbel's prior conviction on 2/24/2004 in Broward Case 03-18045-CF10A, for a 1st Degree Felony [Possession of a Controlled Substance, with Intent to Sell/Deliver, see PSI ¶¶36, 19], alone, appears sufficient to satisfy the statutory requirements for sentencing ranges that applied to both offenses in Olbel's federal case which he committed on 11/8/2006.[12]

Nothing suggests that Olbel's Criminal History Category (calculated as Category VI, see PSI ¶¶22-42) would change. One basis for assigning Olbel Category VI [i.e. that "Career Offenders" are automatically assigned Category VI under §4B1.1(b)] could fall away. It appears that the alternative basis for assigning Olbel Category VI would remain unaffected [i.e. that based on his history of prior convictions Olbel had at least 11 Criminal History Points (from PSI ¶¶22-39), plus a 2-point enhancement under USSG §4A1.1(e), for a total of at least 13 Criminal History Points, which on the USSG Chapter Five Sentencing Table converts to Criminal History Category VI]. (See: PSI and Objections thereto; and see the Sentencing Transcript, as discussed supra in footnote 5 of this Report and related text.)

If, however, the "Battery on a LEO" conviction (from Case 02-18089-CF10A) were not to qualify as a predicate offense under USSG §4B1.1(a), and if Olbel therefore had only one prior conviction (the possession with intent to distribute conviction from Case 03-

_____

[12]   The 0 to 10 year statutory sentencing range for Olbel's federal firearm offense [Count 2] required a prior conviction, in any court, of a crime punishable for a term exceeding one year (see 18 U.S.C. §§922(g)(1), and 924(a)(2). The 10 year to Life statutory sentencing range for Olbel's possession of crack with intent to distribute [Count 1] required that that federal offense have been committed after "a prior conviction for a felony drug offense has become final."

18045-CF10A, listed at PSI ¶36) and was not qualified as a "Career Offender," it appears that his Adjusted Offense Level would not be subject to enhancement from 28 to a Total Offense Level of 37 under §§4B1.1(a) and (b), and appears that his resulting advisory sentencing guidelines range [previously calculated at 360 months to Life, see PSI ¶81] could turn out to be less than previously determined.[13] [If it were assumed, arguendo, that Olbel's Total Offense Level could possibly be reduced to 28, then with a Criminal History Category VI, and Offense Level 28, it appears the Guidelines Table would provide for an advisory guidelines range of 140-175 months].

As discussed in Section II of this Report, on Count 1 [which based on drug quantities attributed to Olbel, and the fact that he had at least one prior conviction for a felony drug offense, carried a statutory term of 10 years to Life under 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)], Olbel was sentenced to a term of 360 months imprisonment, which corresponded with the bottom of the previously calculated 360-Life advisory sentencing guidelines range. On Count 2 [which pursuant to 18 U.S.C. §§922(g)(1) and 924(a)(2) carried a statutory term of 0-10 years], Olbel was sentenced to a concurrent 120 month term of imprisonment.

The Supreme Court in recent years has decided several cases considering whether a prior conviction qualifies as a "violent felony" under the Armed Career Criminal Act's residual clause. These include James v. United States, 550 U.S. 192, 127 S.Ct. 1586

---

[13]    It is noted that, apart from Olbel's 2/24/04 conviction in Broward Case 03-18045-CF10A for Possession with intent to sell (PSI ¶36), no other drug prior convictions listed for Olbel in his PSI qualify as a "controlled substance offense" for purposes of Career Offender Status. (Olbel's prior adult convictions for simple possession in state cases listed at PSI ¶¶28, 30, 33 and 35 do not suffice. This is because, for purposes of determining Career Offender Status under USSG §4B1.1, "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." See Definition, under USSG §4B1.2(b).

(2007)(concluding that the ACCA reaches the crime of attempted burglary; and holding that attempt offenses may qualify as predicates for sentencing under the ACCA, when they involve conduct that presents a serious potential risk of physical injury to another); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581 (2008)(DUI not a "violent felony" under the ACCA); and Chambers v. United States, __ U.S. __, 129 S.Ct. 687 (2009)(Illinois conviction for escape, better described as failure to report, not qualified as violent felony). The Chambers/Begay/James trilogy established a categorical approach whereby courts inquire whether, based on the statutory text, the offense of a conviction involves purposeful, violent, and aggressive conduct whose risks for potential injury are similar in degree and kind to the ACCA's enumerated offenses of burglary, arson, extortion, and any offense involving use of explosives.

The same year that Begay was decided, the Eleventh Circuit held in United States v. Archer, 531 F.3d 1347 (11 Cir. 2008) that under authority of Begay, "the crime of carrying a concealed firearm may no longer be considered a crime of violence under the Sentencing Guidelines," see Archer, at 1352; see also the Eleventh Circuit's 9/10/2010 Opinion in United States v. McGill, 618 F.3d 1273 (11 Cir.2010) (holding, under authority of Begay, possession of short barrel shotgun not a violent felony for ACCA purposes of ACCA). The year after Begay, in United States v. Harrison, 558 F.3d 1280 (11 Cir.2009), the Eleventh Circuit held that fleeing and eluding an officer with neither high speed nor wanton disregard for the safety of others is not a violent felony under the ACCA.

Most recently, the Supreme Court decided Johnson v. United States, __ U.S. __, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (recognizing for the first time that a Florida felony conviction for simple battery under Florida law does not constitute a "violent felony" under the Armed Career Criminal Act). In so doing, the Supreme Court noted that the Florida Battery statute §784.03(1)(a) [discussed further below in this Report] provides, in two sub-

sections, the ways that a battery occurs; and observed that because the elements of the offense as set out in the statute are disjunctive, the prosecution can prove the battery in several ways, i.e., that the defendant caused bodily harm, that he intentionally struck the victim, or that he merely actually and intentionally touched the victim. The Supreme Court noted that the last manner of committing battery [a mere touching] does not constitute a forcible or violent felony because it can be proved by evidence of the slighted unwanted physical touch, and does not include/require the use of physical force as an element. <u>Johnson v. United States</u>, <u>supra</u>, 130 S.Ct. at 1269 (citing <u>State v. Hearns</u>, 961 So.2d 211, 218-19 (Fla. 2007)(holding that the felony offense of battery on a law enforcement officer in violation of <u>F.S.</u> §784.07(2)(b), which requires the same conduct as a misdemeanor battery under §784.03(1)(a), was not a forcible felony)).

Just days after the Supreme Court decided <u>Johnson</u>, it vacated the Eleventh Circuit's opinion in <u>United States v. Williams</u>, 563 F.3d 1239 (11 Cir. 2009), in which the appellate court had held that a Florida conviction for battery on a law enforcement officer was a violent felony under USSG §4B1.1(a). <u>See</u> <u>Williams</u>, <u>supra</u>, 563 F.3d 1239, 1242-43 (11 Cir. 2009), <u>*vacated*</u>, 130 S.Ct. 1434 (2010). On remand, the Eleventh Circuit held on June 22, 2010, that a Florida battery on a LEO, standing alone, does not constitute a "crime of violence" under USSG §4B1.2. <u>United States v. Williams</u>, 609 F.3d 1168 (11 Cir. 2010). While the Supreme Court decision in <u>Johnson</u> interpreted the Armed Career Criminal Act ("ACCA"), a stat-ute passed by Congress and signed into law by the President, and the Eleventh Circuit opinion in <u>Williams</u> dealt with the U.S. Sen-tencing Guidelines, promulgated by the U.S. Sentencing Commission, the Eleventh Circuit in <u>Williams</u> nonetheless determined that the Supreme Court's reasoning in <u>Johnson</u> also applied to the Sentencing Guidelines. <u>Williams</u>, <u>supra</u>, 609 F.3d at 1170 ("this court has repeatedly read the definition of 'violent felony' under §924(e) of the Armed Career Criminal Act as 'virtually identical' to the defi-

nition of a 'crime of violence' under U.S.S.G. §4B1.2.")(quoting
<u>United States v. Archer</u>, 531 F.3d 1347, 1352 (11 Cir. 2008). The
Eleventh Circuit in <u>Williams</u>, upon remand of the case from the
Supreme Court, in turn vacated Williams' sentence and remanded the
matter to the district court for re-sentencing. In doing so, the
Eleventh Circuit, in pertinent part, observed that <u>Fla.Stat.</u>
784.03(1) which defined battery, has two sub-sections, Section
"(a)" [which provides that a battery is committed when a person
actually intentionally touches or strikes another person against
their will], and Section "(b)" [which provides that a battery is
committed when a person intentionally causes bodily harm to an
individual]. Continuing, the <u>Williams</u> court noted that "we find no
evidence in the record, that we can consider under <u>Shepard v.</u>
<u>United States</u>, to clarify under which of these provisions Williams
was convicted." <u>Williams</u>, 609 F.3d at 1170 (citing <u>Shepard v.</u>
<u>United States</u>, 544 U.S. 13, 26 (2005)). In 2005, in <u>Shepard</u>, the
Supreme Court had exempted prior convictions from having to be
alleged and proved beyond a reasonable doubt when used by the
government to increase a defendant's penalty. As further noted by
the Eleventh Circuit in <u>Williams</u>, <u>supra</u> at 1170, the Supreme Court
in <u>Shepard</u> limited fact finding concerning prior convictions to
"the terms of the charging document, the terms of a plea agreement
or transcript of a colloquy between judge and defendant in which
the factual basis for the plea was confirmed by the defendant, or
to some comparable judicial record of this information." <u>United</u>
<u>States v. Williams</u>, 609 F.3d at 1174 (quoting <u>Shepard v. United</u>
<u>States</u>, 544 U.S. at 26). Finally, the Eleventh Circuit in <u>Williams</u>
concluded that "to the extent that the district court believed that
Williams' conviction for battery on a law enforcement officer was
a "crime of violence" because it involved "the use, attempted use,
or threatened use of physical force," and thus qualified for
enhancement, the sentence must be set aside."

     As reflected in the copy of the Judgment from Broward Case 02-
18089-CF10A, submitted in this case by Movant Olbel (Cv:DE15, at

p.10), he [Olbel] was convicted of <u>Count I</u>, "Battery Law Enforce-ment Officer" in violation of <u>Fla.Stat.</u> §784.03(1), a 3rd Degree Felony; and was convicted of <u>Count II</u>, "Resisting Without Violence" in violation of <u>Fla.Stat.</u> §843.02, a misdemeanor.

The Statute in question [discussed in <u>Williams</u>, <u>supra</u>] under which Movant Olbel was convicted, <u>F.S.</u> §784.03(1) [enhanced in his case to a 3rd Degree felony because a Law Enforcement Officer was the victim], provides that a battery may occur under either of two circumstances. In pertinent part, the Statute reads, as follows:

> 784.03 Battery; felony battery
>
> (1)(a) The offense of battery occurs when a person:
>
> 1. Actually and intentionally touches or strikes another person against the will of the other; or
>
> 2. Intentionally causes bodily harm to another person.
>
> (b) Except as provided in subsection (2), a person who commits battery commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
>                *       *       *
> (<u>Fla.Stat</u>. §784.03(1)(a),(b)).

Section 784 of the Florida Statutes further provides that where a misdemeanor battery has been committed, and the victim of the offense was a police officer, the offense is to be reclassified as a felony of the third degree. That provision reads:

> Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer...the offense for which the person is charged shall be reclassified as follows: ...
>
> (b) In the case of battery, from a misdemeanor of the first degree to a felony of the third degree.
>
> (<u>Fla.Stat</u>. §784.07(2)).

In pertinent part, the copy of the Judgment from Case 02-18089-CF10A, which Movant Olbel has submitted for the record in this §2255 proceeding [Cv:DE15, p.10], shows that that Battery conviction was the result of a plea of *nolo contendere*.

Although in Olbel's federal criminal case [06-60344-Cr-Zloch] the PSI at ¶2 provides some factual details relating to the events which gave rise to the charges of Battery [Count 1] and Resisting Without Violence [Count 2] in Broward Case 02-18089-CF10A, it appears that that information in the PSI was derived from a Police Report, and not a judicial record, and therefore is not the type of evidence required under <u>Shepard</u>.[14] <u>See</u> <u>Matthews v. United States</u>, Nos. 2:04-cr-76-FTM-33DNF, 2:08-cv-740-FTM-33DNF, 2009 WL 3818505, at *4 and n.3 (M.D.Fla., Nov. 13, 2009)(in §2255 action, when considering whether prior burglary convictions were crimes that presented a serious potential threat of physical injury to another, so as to qualify as predicate offenses under the ACCA, the Court declined the government's invitation for it to rely on law enforcement officers' probable cause affidavits and other documents

---

[14]     The PSI, at ¶32, listing Olbel's convictions in Case 02-18089-CF10A for Ct.1: Battery On a Law Enforcement Officer, and Ct.2 Resist Without Violence, stated in pertinent part, as follows, *verbatim*:

> According to the arrest report, the defendant was observed riding a bicycle along the closed commercial corridor of North Dixie Highway. The police officer attempted to stop the defendant but he jumped off his bike and fled on foot. A foot chased ensued and the defendant ran through numerous business properties that were closed and posted against trespassing. The defendant was eventually detained, resisted arrest and could not produce any identification the defendant began to fight with the arresting officer, causing them to fall to the ground. The defendant began to spit on the officer and bit the officer's hand while being restrained.

> Following his initial arrest for this offense on October 23, 2002, the defendant bonded out of custody on October 26, 2002. He was rearrested for this offense on December 17, 2002 and sentenced on December 20, 2002.

(PSI, ¶32).

outside the judicial record to demonstrate that Matthews had
entered the structures; and in doing so, noted that the Supreme
Court in Shepard v. United States, 544 U.S. 13 (2005) had
restricted the kind of evidence that a judge may consider in making
a finding that a prior conviction qualifies under the ACCA to
judicial records).

Review of the record in Olbel's federal criminal case [06-
60344-Cr-Zloch] does not reveal what documents and inferences
therefrom, if any, qualifying as "Shepard evidence," may have been
used by the Court to reach a conclusion that Olbel's Battery con-
viction was a "violent felony" for purposes of sentencing enhance-
ment. Here, examination of the sentencing transcript in Movant
Olbel's underlying federal criminal case (Cr:DE103) does not reveal
that documents of a judicial nature from Case 02-18089-CF10A were
considered in reaching a determination that the Battery [relied on
as one of two predicate offenses to deem Olbel a "Career Offender"
and to enhance his Offense Level from 28 to 37] was not a battery
of the first type [a simple battery, under §784.03(1)(a)] which has
been held not to qualify as a violent felony for ACCA or guidelines
purposes, and that it was instead a battery of the second type
[under §784.03(1)(a)] which could, if supported with a showing of
Shepard evidence, qualify as a violent felony for ACCA or
guidelines purposes. See Johnson v. United States, supra, 130
S.Ct. at 1269; Shepard v. United States, 544 U.S. at 26; United
States v. Williams, 609 F.3d at 1170; and Matthews v. United
States, supra, 2009 WL 3818505, at *4.

In other circuits, the courts have held that Chambers and
Begay apply retroactively. See Lindsey v. United States, 615 F.3d
998 (8 Cir.2010) (Supreme Court's decision in Begay, that DUI in-
volving alcohol was not a violent felony as contemplated by the
ACCA applied retroactively, and as such the question whether the
appellant was entitled to relief turned on whether his claim was
procedurally defaulted); Welch v. United States, 604 F.3d 408, 415

29

(7 Cir. 2010)(holding that the <u>Begay</u> rule is retroactively applicable on collateral review); <u>United States v. Shipp</u>, 589 F.3d 1084 (10 Cir. 2009)(holding that the Supreme Court decision in <u>Chambers v. United States</u>, applied retroactively on collateral review to initial Section 2255 motions). <u>But see</u> <u>United States v. Giggery</u>, 551 F.3d 27, 36, n.3 (1 Cir.2008)(stating in dicta that the Circuit's holding that non-residential burglary is not a *per se* "crime of violence" under the Sentencing Guidelines is not a retroactive substantive change in the law). District Courts likewise have split on the issue of Begay's retroactivity.[15]

On June 21, 2010, a three judge panel of the Eleventh Circuit determined that the Supreme Court decision in <u>Begay</u> and its own

---

[15]      In <u>Welch</u>, <u>supra</u>, 604 F.3d at 415, n.7, the Seventh Circuit listed district court decisions diverging on the question of retroactivity of <u>Begay</u> and its progeny.

Listed cases finding retroactivity included: <u>United States v. Fondren</u>, No. 4:06-CR-22 CEJ, 2009 WL 3246906, at *1 (E.D.Mo. Oct.6, 2009) (retroactive); <u>Kendrick v. United States</u>, No. 5:08-cv-447-Oc-10GRJ, 2009 WL 2958976, at *2 (M.D.Fla. Sept. 15, 2009) (same); <u>United States v. Blue</u>, No. 09-1108, 2009 WL 2581284, at *3-*4 (D.Kan. Aug.20, 2009) (finding <u>Chambers</u> to be retroactive); <u>Frederick v. United States</u>, No. 08-22143-CV, 2009 WL 2488965, at *8 (S.D.Fla. Aug.12, 2009) (retroactive) (adopting magistrate judge's report finding <u>Begay</u> to be retroactive); <u>McCarty v. United States</u>, No. 8:08-cv-1619-T-24TBM, 2009 WL 1456386, at *2 (M.D.Fla. May 22, 2009) (retroactive); <u>George v. United States</u>, 650 F.Supp.2d 1196, 1200 (M.D.Fla.2009) (same); <u>United States v. McElroy</u>, No. 09-CV-0040-CVE-PJC, 2009 WL 1372908, at *2-*3 (N.D.Okla. May 14, 2009) (same); <u>United States v. Radabaugh</u>, No. 08-CV-762-CVE-TLW, 2009 WL 565065, at *5 (N.D.Okla. Mar.5, 2009) (same); <u>United States v. Leonard</u>, No. 08-CV-0389-CVE-FHM, 2009 WL 499357, at *3-*4 (N.D.Okla. Feb.27, 2009) (same); <u>United States v. Glover</u>, No. 08-CV-0261-CVE-FHM, 2008 WL 2951085, at *4 (N.D.Okla. July 28, 2008) (same).

Listed cases finding non-retroactivity included: <u>United States v. Ross</u>, No. 09-cv-779-bbc, 2010 WL 148397, at *4 (W.D.Wis. Jan.12, 2010) (not retroactive); <u>United States v. Jones</u>, No. 6:09-7082-DCR, 2010 WL 55930, at *3-*6 (E.D.Ky. Jan.4, 2010) (same); <u>Kirkland v. United States</u>, No. 3:09-CV-335 RLM, 2009 WL 3526185, at *8 (N.D.Ind. Oct.22, 2009) (same); <u>United States v. Johnson</u>, No. 04-269 (MJD/AJB), 2009 WL 2611279, at *3-*4 (D.Minn. Aug.24, 2009) (same); <u>Sun Bear v. United States</u>, No. CIV 08-3021, 2009 WL 2033028, at *3-*4 (D.S.D. July 9, 2009) (same); <u>United States v. Narvaez</u>, No. 09-cv222-bbc, 2009 WL 1351811, at *1 (W.D.Wis. May 12, 2009) (same); <u>Lindsey v. United States</u>, No. 09-0249-CV-W-ODS, 2009 WL 2337120, at *2 (W.D.Mo July 29, 2009) (same); <u>United States v. Campbell</u>, No. 6:06-812-HMH, 2009 WL 1254287, at *1 (D.S.C. May 1, 2009) (same).

decision in <u>Archer</u> apply retroactively. <u>See</u> <u>Gilbert v. U.S.</u>, 609
F.3d 1159 (11 Cir. 2010)(stating that <u>Begay</u> is a "circuit law
busting, retroactive Supreme Court decision"). Gilbert's case
involved 1995 indictment for possession with intent to distribute
crack and marijuana, and at sentencing, he was classified as a
career offender under USSG §4B1.1, based on two prior convictions,
one for possession with intent to sell crack, and a second
conviction for carrying a concealed firearm, which at the time of
his sentencing was deemed a "crime of violence," but which later
under authority of <u>Archer</u> and <u>Begay</u> no longer qualified as a crime
of violence under the sentencing guidelines.

Just days ago, on November 3, 2010, the Eleventh Circuit,
noting that a member of the Court in active service having
requested a poll on the suggestion of hearing en banc and a
majority of the judges in the Court in active service having voted
in favor of a rehearing en banc, ordered that the cause [in
<u>Gilbert</u>] shall be reheard by the court en banc, and ruled,
therefore, that "the previous panel's opinion [i.e., <u>Gilbert v.</u>
<u>U.S.</u>, 609 F.3d 1159 (11 Cir. 2010)] is hereby VACATED." <u>Gilbert v.</u>
<u>United States</u>, No. 09-12513, __ F.3d __, 2010 WO 4340970, at *1 (11
Cir. Nov. 3, 2010).

Although the Eleventh Circuit opinion in <u>Gilbert</u>, holding in
pertinent part that <u>Begay</u> and its progeny are retroactive on
collateral review has been temporarily vacated, upon the Court's
decision to hold a rehearing *en banc*, that does not mean that this
District Court cannot itself make that determination. The Eleventh
Circuit, in <u>Dodd v. United States</u>, 365 F.3d 1273 (11 Cir. 2004),
<u>aff'd. on other grounds</u>, 545 U.S. 353 (2005), noted that any court,
including the district court in which the motion is filed, can make
a new rule retroactive. <u>Dodd</u>, <u>supra</u>, 365 F.3d at 1280-81. In
reaching that conclusion, the Court noted that the 1 year
limitations period applicable to 2255 motions must logically run
from the date that the Supreme Court *initially* recognizes a new

right, and that it would be illogical for a movant to have to wait until some uncertain future date on which the right is later made retroactively available for collateral review. See Dodd, supra, 365 F.3d at 1280-81.

It appears, as the Eighth, Seventh, and Tenth Circuits have held, respectively in Lindsey, Welch, and Shipp; as this Court has previously held, see Frederick, supra; and as the Middle District of Florida has held, see Kendrick and McCarty, supra, that Begay and Chambers should be deemed retroactively applicable; and that the Supreme Court decision in Johnson, holding for the first time that a simple battery as defined under the Florida Statutes is not a violent felony for purposes of the ACCA, likewise should be treated as retroactively applicable on collateral review.

As briefly stated at the beginning of the discussion of this third ground of Olbel's amendment, it does not appear that the Movant Olbel's claim can be said to be procedurally defaulted, as untimely. Johnson and Gilbert from which Olbel's claim flows, were both decided after Olbel's trial proceedings and appeal, and after the filing of Olbel's initial Motion. His amendment raising the instant claim was filed on 8/31/2010, about 5 months after the 3/2/2010 Supreme Court decision in Johnson, and less than 4 months after the 6/21/2010 decision in Gilbert [now vacated to allow rehearing en banc].

However, even if this were not so, it appears, for reasons discussed above, that Movant Olbel's motion claiming that he is actually innocent of being a Career Offender, should be heard, based on the Manifest Injustice doctrine.

The law is clear that Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or... the court was without jurisdiction

to impose such sentence, or... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." <u>See</u> 28 U.S.C. §2255(a); and <u>see</u> <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962). <u>United States v. Jones</u>, 56 F.3d 62 (4 Cir. 1995)("A sentence is otherwise subject to collateral attack where there is an error constituting a 'fundamental defect which inherently results in a complete miscarriage of justice.'" (quoting <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979)). <u>See also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986) ("victims of fundamental miscarriages of justice will meet the cause-and-prejudice standard") (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 135 ((1982); <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995)(the miscarriage of justice exception was explicitly tied to actual innocence to ensure that the exception would remain 'rare" and be applied only in the 'extraordinary case', while at the same time ensuring that the exception would "extend relief to those who truly were deserving"). <u>Cf</u> <u>Prince v. Morrow</u>, No. CIV 97-1796-ST, 1999 WL 985130, at * (D.Or., Sept. 16, 1999)("because Prince has failed to demonstrate that he is actually innocent of the dangerous offender sentencing enhancement, no manifest injustice would result from declining to review Prince's defaulted claims); <u>United States v. Manfre</u>, 456 F.3d 871, 874 (8 Cir. 2006)("we believe that imposition of a sentencing enhancement that is contrary to the district court's factual findings would constitute a manifest injustice if those findings are supported by the evidence).

In sum, it appears, in the absence of "<u>Shepard</u> evidence" demonstrating that the "Battery on a LEO" conviction in Case 02-18089-CF10A qualified as a violent felony and therefore a predicate offense under USSG §4B1.1(a) to categorize Movant Olbel as a Career Offender, that Olbel's sentence should be vacated, and that he should be afforded a new sentencing hearing.

## IV      CONCLUSION

It is therefore recommended that: (1) the movant Olbel's motion to vacate pursuant to 28 U.S.C. §2255 (Cv:DE#1, as Amended, Cv:DE15) be Denied, in part, to the extent that it constitutes an attack upon Olbel's convictions in Case 06-60344-Cr-Zloch; (2) the Motion to Vacate be granted, in part, solely to the extent that the movant's sentence as a Career Offender be vacated and a new sentencing hearing be had; and (3) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: November 15th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Johnny Olbel, Pro Se
      Reg. No. 77257-004
      USP - McCreary
      United States Penitentiary
      P.O. Box 3000
      Pine Knot, KY 42635

      Jennifer C. Millian, AUSA
      U.S. Attorney's Office
      7795 S.W. 6th Street, 2nd Floor
      Plantation, FL 33324