UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60890-Civ-ZLOCH
        (06-60344-Cr-ZLOCH)
MAGISTRATE JUDGE P.A. WHITE

JOHNNY OLBEL,                  :

        Movant,               :

v.                            :          **SUPPLEMENTAL REPORT**
                                         **OF MAGISTRATE JUDGE**
UNITED STATES OF AMERICA,:               **UPON RE-REFERRAL OF CASE**

        Respondent.           :

_____

## I   INTRODUCTION

Movant Olbel has filed a Motion to Vacate pursuant to 28 USC §2255 with 3 claims (Cv:DE1), an Amendment with 3 claims (Cv:DE15), and a Supplement with 2 more claims (Cv:DE21). They attack Olbel's convictions and sentences in Case 06-60344-Cr-Zloch, entered after a jury found him guilty as charged in the Superseding Indictment, on <u>Count 1</u>, possession with intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), and on <u>Count 2</u>, felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). This case was referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts (Cv:DE3), and as discussed below has been re-referred for further consideration (Order, Cv:DE22).

### A.   BACKGROUND LEADING TO THE CURRENT POSTURE OF THIS CASE

A prior Report (Cv:DE18) addressing the initial Motion and first Amendment (Cv:DEs 1, 15) was entered with benefit of a Court-ordered response to the 3 claims in the initial Motion, but without ordering a Government Response to the 3 claims in the Amendment.[1] That Report (Cv:DE18) recommended that relief be denied on all 3 claims of the initial Motion [Cv:DE1] and the first 2 claims of the Amendment [Cv:DE15], but recommended on the 3rd claim of the Amend-

---

[1] A paperless Order (Cv:DE16) was entered denying the motion to amend (Cv:DE15), without prejudice. As noted in the prior Report (Cv:DE18, p.9) no Order to Show Cause was entered for a Response to the claims in Olbel's Amendment.

ment that Movant Olbel be granted relief [i.e., that his sentence as a Career Offender be vacated and a new sentencing hearing be had]. (Report, Cv:DE18). The Government filed Objections (Cv:DE19). Olbel then filed a proposed Supplement (Cv:DE21 captioned "Motion for Leave to Supplement §2255 Motion") seeking to add his 7th and 8th claims incorporated therein. The Honorable William J. Zloch, United States District Judge, entered an Order (Cv:DE22) re-referring the Matter for further consideration, and further Report and Recommendation. A Supplemental Order (Cv:DE23) granted Olbel leave to file the Supplement Cv:DE21, without prejudice to the application of <u>Davenport v. United States</u>, 217 F.3d 1341 (11 Cir.2000). It treated the Motion/Supplement Cv:DE21 as a 2nd amendment to the §2255 Motion, and required a Government Response to the new claims therein; and *sua sponte* granted the Government leave to supplement any Objection to the 3 claims of the 1st Amendment [Cv:DE15]. The Government Responded (Cv:DE29); and Olbel Replied (Cv:DE33). Thereafter, Olbel filed a "Supplement to Motion for Second Extenstion of Time to Reply to Govt. Response" (Cv:DE35), incorporating a request for appointment of counsel, and a request [relating to his Claim 7] asking that the Court stay this §2255 action indefinitely.[2]

---

[2] Olbel sought to Exclude Government Response to 3 claims in his Amendment [Cv:DE15], arguing it "waived" its right to oppose them when it filed no "Response" and instead waited and flied Objections to the Report [Cv:DE19]. ("Motion to Exclude," Cv:DE24). The Motion to Exclude was denied (Order Cv:DE25). As noted (fn.1, <u>supra</u>), no Supplemental Order was entered for a Government Response to the 3 Claims in the Amendment Cv:DE15. Initially, leave to amend had been denied (Order, Cv:DE16); but then the Claims in the Amendment were addressed (Report, Cv:DE18) without a Government Response. There was no waiver by the Government.

On re-referral of the case, the Government was granted a 10 day extension to file its Court-ordered Supplemental Response (Motion, Cv:DE26; Order Cv:DE28), and did so on 10/20/11 (Cv:DE29). Movant sought two extensions to Reply. The first (Motion, Cv:DE30) was because his copy of the Government's Supplemental Response was sent to the wrong institution, and then was forwarded to him; and because his prison was on "lock down" from 10/8 to 11/2/11. In the second Motion (undated, but file stamped 12/14/11, Cv:DE32) Olbel sought 30 days to Reply, but he then submitted his 25-page Reply (Cv:DE33, dated 12/14, docketed 12/19/11).

Finally, Olbel filed a "Supplement to Second Motion for Extension" (Cv:DE35, which was docketed as a "Supplement" not a motion) asking that this Court appoint him counsel, and requesting an indefinite stay of this §2255

## B.   THE MOVANT'S CLAIMS

The Movant's eight grounds, from his initial motion (Cv:DE1), amendment (Cv:DE15), and Supplement (Cv:DE21) are as follow.

## (Claims from the Initial §2255 Motion, Cv:DE1)

1.   **The defendant has standing to object to the search of the car in his possession // Defense counsel failed to protect the petitioner's fourth amendment Rights.**

2.   **The government never proved that Johnny Olbel, had actual or constructive possession of a firearm or that Olbel, affected interstate commerce** [and Olbel asserts that the claim was not raised on appeal due to counsel's ineffective assistance].

3.   **The governments evidence is wholly insufficient to support the conviction in both counts. the conviction violates the 5th and 6th amendments** [and Olbel asserts that the claim was not raised on appeal due to counsel's ineffective assistance].

## (Claims from the 1st Amendment, Cv:DE15)

1.   **Ineffective Assistance of Counsel For Failure to Successfuly** [sic] **Argue Petitioner's Motion to Suppress the Evidence.**

[Here, Movant claims that the officer's reason for "stopping" him was "not based on reasonable articulated suspicion;" that there was an "illegal seizure of [his] person;" and that if counsel had properly argued his motion to suppress, the evidence which was seized would have been suppressed].

2.   **Failure to Comply with Section 851.**

[The essence of this claim is that the "*Information and Notice of Government's Intention to Rely Upon Prior Narcotics Convictions as*

---

proceeding pending resolution of proceedings brought in the State forum in relation to <u>State v. Adkins, et al.</u>, 71 So.3d 184 (Fla. 2 Dist. 2011) (Appeal No. 2D11-4559, Certifying as requiring resolution by the Florida Supreme Court, an Order entered by the Honorable Scott M. Brownell, Circuit Judge, granting motions to dismiss by 42 defendants in 46 separate drug prosecutions in Manatee County, on the ground that Fla.Stat. §893.13 (2002-2011) is unconstitutional).

*Grounds for Increased Punishment*" (Cr:DE48, filed 6/6/2007) has a type-written signature of the government attorney; and Movant, citing <u>Becker v. Montgomery</u>, 532 U.S. 757 (2001), argues that "that typewritten signature does not satisfy the rule regarding pleadings (under rule 11) civil procedure."].

**3.** **In light of the recent decision by the U.S. Supreme Court <u>Johnson vs. United States</u> 130 S.Ct. 1265 (2010) the petitioner is actual innocent of the enhancement under 4B1.1 guideline provision.** [Movant also cites "<u>Gilbert v. United States</u>, 2010 U.S. App.Lexis 12693 no 09-12513 (June 21, 2010 11th cir." ].

**<u>(Claims From the Supplement or 2nd Amendment, Cv:DE21)</u>**

1. The U.S. District Court's decision in **<u>Shelton v. Sec'y, Dep't of Corr.</u>**, 812 F.Supp.2d 1289, 2011 WL 3236040 (M.D.Fla., July 27, 2011) (citing <u>State v. Green</u>, No. 08-3673-CF-10A (Fla.Cir.Ct. Feb.7, 2011) **"declaring Fla.Stat. §893.135(1)(b) unconstitutional on its face and as applied, takes away all [of Movant Olbel's] priors used in the §851 enhancement notice used to enhance the movant's sentence of 360 months** [and]..."therefore, the court's jurisdiction was not conferred because the prior convictions are non-existent...".

[Phrased differently, the Movant claims that none of his prior State drug convictions [in Case 03-18045CF10 (on 2/23/04), for Possession with Intent to Deliver Cocaine; in Case 03-13715CF10 (2/23/04), for Possession of Cocaine; and in Case 02-18385CF10 (on 12/20/02) for Possession of Cocaine] which were listed in the Government's §851 Notice (Cr:DE48), could be used to support enhancement of his federal sentence, and the court lacked jurisdiction because those convictions were rendered "non-existent" by the <u>Shelton</u> decision].

2. **"His attorney was ineffective for not challenging the §851 Notice based on the prior §893.13 offenses being unconstitutional on its face under the legal and factual argument that the "men rea" had been omitted and must be in the law in order for it to be in compliance wit due process of law."**

## II    <u>DISCUSSION</u>

The Court presently has for its consideration the initial §2255 motion (Cv:DE1) and memo (Cv:DE2) raising 3 grounds for

relief; the government's Response (Cv:DE14) and Ex.A, the Appellee's Brief from Movant Olbel's direct appeal [USCA #07-14175-J] (Cv:DE14-1); Movant's Response (Cv:DE10) to an Order (Cv:DE5) requiring him to address the issue of timeliness of his motion; Movant's "Motion to Amend" with exhibits (Cv:DE15), treated as an Amendment raising 3 additional/supplemental grounds for relief; the prior Report [Cv:DE18], and the Government's Objections thereto (Cv:DE19); and the Order of Re-Referral (Cv:DE22). The Court also has before it the Government's Supplemental Response (Cv:DE29) directed to the Movant's 6th, 7th and 8th claims [i.e., Claim 3 of the Amendment Cv:DE15; and Claims 1 and 2 of the Supplement Cv:DE21]; Movant's Reply to the Government's Supplemental Response (Cv:DE33); and Movant's "Supplement" incorporating a motion for indefinite stay (Cv:DE35), following a 2nd Motion (Cv:DE32) for extension of time (Cv:DE32) to file his "Reply" (Cv:DE33). The Court also has considered the PSI, an Addendum thereto, and the Court's SOR, all prepared in 2007; pertinent portions of the record in Movant's criminal case [06-60344-Cr-Zloch]; and relevant portions of the U.S. Sentencing Commission Guidelines Manual.

### A.    MOVANT'S CLAIMS 1-3 FROM THE §2255 MOTION Cv:DE1, AND CLAIMS 1 AND 2 FROM THE 1st AMENDMENT Cv:DE15

In its "Objections to Report" (Cv:DE19) the Government opposed only the recommendation (Cv:DE18) that the Court grant relief on ground 3 of Movant's Amendment. The Government's Supplemental Response [Cv:DE29] addresses only ground 3 of Movant's Amendment [Cv:DE15], and grounds 1 and 2 of Movant's Supplement [Cv:DE21].

The discussion and analysis from the prior Report (Cv:DE18), as it pertains to the Movant's first 5 grounds, is incorporated herein by reference; and for the reasons previously stated therein, it is recommended that relief on Claims 1-3 of the initial Motion [Cv:DE1], and Claims 1-2 of the Amendment [Cv:DE15] be denied.

**B.   MOVANT'S CLAIM 3 FROM THE 1ST AMENDMENT Cv:DE15, AND CLAIMS 1 AND 2 FROM THE SUPPLEMENT [2ND AMENDMENT] Cv:DE21**

There remains Movant's 6th claim [Claim 3 from Cv:DE15] for further consideration and analysis, upon re-referral by the Court. There also remain Movant's 7th and 8th claims [Claims 1 and 2 from Cv:DE21] for consideration and analysis after the Government's Supplemental Response [Cv:DE29] and the Movant's Reply [Cv:DE33].

Movant's Claim 3 from the 1ST Amendment Cv:DE15, which was the subject of the Government's Objections (Cv:DE19), is given further consideration below in Section "IIB.1" of this Supplemental Report.

Movant's new claims [1 and 2 from Supplement Cv:DE21] which were not a subject of the prior Report, are addressed in Section "IIB.2." of this Report, below, after briefing by the parties.

**1.   RECONSIDERATION OF CLAIM 3 FROM THE AMENDMENT Cv:DE15, UPON GOVERNMENT OBJECTIONS (Cv:DE19), RE-REFERRAL (CV:DE22), SUPPLEMENTAL GOVERNMENT RESPONSE (CV:DE29), AND THE MOVANT'S REPLY (CV:DE33)**

For reasons discussed in the Prior Report (Cv:DE18, at pp.21-33), it was recommended that relief be granted based on this claim, in which Movant Olbel argued that pursuant to Johnson v. United States, 130 S.Ct. 1265 (2010), and the June 21, 2010 decision in Gilbert v. United States, 609 F.3d 1159 (11 Cir. 2010) [hereinafter "Gilbert I"], he is actually innocent of his Career Offender sentencing enhancement imposed pursuant to §4B1.1 of the Guidelines.

When the prior Report (Cv:DE18) was entered on 11/15/10, it was noted therein that less than 2 weeks earlier, on 11/3/10, the Eleventh Circuit had vacated it is 6/21/10 Gilbert opinion [Gilbert I] upon the granting of rehearing en banc. See Gilbert v. United States, No. 09-12513, Gilbert v. United States, No. 09-12513, 625 F.3d 716, 2010 WL 4340970, at *1 (11 Cir. Nov. 3, 2010).

Subsequently, between the filings of the government's 12/2/10 Objections to Report (Cv:DE19) and its 10/20/11 Supplemental Response (Cv:DE29), the Eleventh Circuit reversed its decision in Gilbert I, and issued a new *en banc* decision, on 5/19/2011. Gilbert v. United States, 640 F.3d 1293 (11 Cir.2011)["Gilbert II"].

In its Supplemental Response (Cv:DE29), the Government raises a number of arguments in support of its contention that the Movant Olbel is entitled to no relief on his claim based on Johnson.

The Government's Supplemental Response (Cv:DE29, pp.4-10) includes the following arguments. Although Movant Olbel alleges he is actually innocent of his §4B1.1 guideline enhancement, a defendant who is convicted and then at sentencing is subjected to a Career Offender enhancement as part of the calculation of his sentence, has not been found guilty of the enhancement. Movant Olbel's assertion, which is based on alleged misapplication of the Career Offender provision of the Guidelines, USSG §4B1.1(a), is a non-constitutional claim that ordinarily cannot be the subject of a collateral attack. The claim is not cognizable under §2255 and has become procedurally defaulted and barred from review, where it was not raised on direct appeal; and no manifest injustice has been shown to exist, where, according to the Government, the Movant's sentence "falls well within" the limits prescribed by statute; and even if the Guidelines Range were adjusted to exclude the Career Offender enhancement, the Court pursuant to the statutes could still impose the same sentences that it imposed when using the enhancement [360 months on Count 1, and 120 months on Count 2].

The government correctly argues that Courts have held that a §2255 proceeding is not a substitute or alternative avenue to appeal a conviction, Lynn v. United States, 365 F.3d 1225, 1232 (11 Cir.2004), and that claims not raised on direct appeal may be procedurally barred from review in a collateral §2255 proceeding. See generally Greene v. United States, 880 F.2d 1299, 1305 (11 Cir.

1989)(holding, in pertinent part, that in general, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a §2255 proceeding, citing Parks v. United States, 832 F.2d 1244, 1245 (11 Cir.1987), and further holding that a defendant can avoid the bar only by showing both cause for the failure to raise the claim on direct appeal, and actual prejudice arising from the failure, citing Parks, supra, 832 F.2 at 1245, and United States v. Frady, 456 U.S. 152, 164 (1982)).

Procedural default may be excused, based on one of two exceptions: (1) on a showing of cause for failing to raise the claim on direct appeal and actual prejudice from the error; or (2) for a miscarriage of justice or actual innocence. McKay v. United States, 657 F.3d 1190, 1196-97 1195 (11 Cir.2011). Under the actual innocence exception, the procedural default is excused if the prisoner can show that he is actually innocent of the crime of conviction, or in the capital sentencing context, that he is inncent of the sentence itself. Id. at 1196-97.

Gilbert II made it explicitly clear that a defendant like Olbel cannot be "actually innocent" of being a Career Offender because he was never convicted of being a Career Offender. Gilbert supra, 640 F.3d at 1320 ("A defendant who is convicted and then has the §4B1.1 career offender enhancement, or any other guidelines enhancement, applied in the calculation of his sentence has not been convicted of being guilty of the enhancement.").

In McKay, supra, the Eleventh Circuit declined to extend the actual innocence exception to the procedural default rule to a prisoner's claim that he was erroneously sentenced as a Career Offender because one of his prior convictions did not legally qualify as a crime of violence. Id. at 1198. The Court reasoned that such a claim is "one of legal, rather than factual, innocence and thus fails to fall within the actual innocence exception's purview." Id. These holdings were reaffirmed by the Court in Johnson v. United

States, No. 11-10319, 2012 WL 555667, at *1-2 (11 Cir., Feb. 21, 2012).[3] Here, Movant Olbel has not contended that he is factually innocent of the crime of conviction, but rather is innocent of his Career Offender status and enhanced sentence -- a result of his state BOLEO conviction qualifying as one of two predicate offenses required for sentencing enhancement under §4B1.1(a) -- which later was called into question by the Supreme Court's decision in Johnson v. United States, 130 S.Ct. 1265 (2010).

In the prior Report (Cv:DE18) the undersigned concluded, in pertinent part, that it appeared Movant Olbel's claim should not be treated as procedurally defaulted and untimely, because the Supreme Court's Johnson decision, from which his claim flows, was decided after Olbel's trial proceedings and appeal, and after the filing of his §2255 Motion; and because his amendment raising the instant claim was filed on 8/31/2010, less than a year [about 5 months] after the the Court's 3/2/2010 decision in Johnson. That conclusion is now undermined by the Eleventh Circuit's February 2012 decision in Kerr v. United States, No. 10-13621, 2012 WL 425792, at *1 (11 Cir., Feb. 10, 2012). [Kerr involved appeal of denial of a §2255 Motion, where the Appellant, claiming "actual innocence of his career offender sentencing enhancement," argued that in light of Begay and Archer[4] his enhanced sentence violated the guidelines, and contended that in light of Johnson, 130 S.Ct. 1265 (2010) that his second predicate offense [BOLEO] no longer was considered a

---

[3]    This 2012 Eleventh Circuit decision involved an appeal from denial of a §2255 motion by Duarne Johnson. The Petitioner in Johnson v. United States, 130 S.Ct. 1265 (2010) was a different Florida prisoner, Curtis Darnell Johnson.

[4]    In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court clarified the definition of a violent felony under the Armed Career Criminal Act ("ACCA"), and held that driving under the influence of alcohol did not constitute a violent felony under the statute. Id., 553 U.S. at 148.

       The same year that Begay was decided, the Eleventh Circuit held in United States v. Archer, 531 F.3d 1347 (11 Cir. 2008) that under authority of Begay, "the crime of carrying a concealed firearm may no longer be considered a crime of violence under the Sentencing Guidelines," see Archer, at 1352.

crime of violence. Kerr claimed he could not have raised the claims in a direct appeal, because <u>Begay</u>, <u>Archer</u>, and <u>Johnson</u> were all decided long after he plead guilty and was sentenced in 2001. The Eleventh Circuit, citing <u>Lynn</u>, <u>supra</u>, 365 F.3d at 1232, refused to consider the claims, and rejected Kerr's argument that absent authority for doing so he could not have raised the claims on direct appeal. The Court noted that "perceived futility" in raising an issue on direct appeal does not constitute cause for not raising it. <u>Kerr</u>, <u>supra</u>, 2012 WL 425792, at *1 (citing <u>Smith v. Murray</u>, 477 U.S. 527, 533; 106 S.Ct. 2661, 2666 (1986)). [The Eleventh Circuit concluded its opinion stating: "Indeed, even though the decisions in <u>Begay</u>, <u>Archer</u>, and <u>Johnson</u> were unavailable when Kerr was sentenced in 2001, he could have argued on appeal that his career-offender status was improper—just as Begay, Archer, and Johnson did. Because Kerr could have raised this claim on direct appeal but failed to do so, his claim is not cognizable now on collateral review under section 2255."]. Here, in Olbel's case, the Government, <u>citing</u> <u>United States v. Coley</u>, 336 Fed.Appx. 933, 936 (11 Cir.2009), makes the same argument in its Supplemental Response (Cv:DE29), contending that Olbel could have argued that his underlying predicate offense [a Florida BOLEO conviction] did not qualify as a crime of violence, "much like Johnson, Begay, and Archer did when their cases went up on appeal."

The Eleventh Circuit has held that due process is implicated where, based on case law decided after a defendant's sentencing, one or more of the predicate offenses required for a sentencing enhancement no longer apply, and the defendant's [ACCA] enhanced sentence "is beyond the statutory maximum on a basis that is no longer applicable." See <u>Hunter v. United States</u>, Nos. 07-13701, 07-14422, 2011 WL 6379322 (11 Cir., Dec. 21, 2011)(citing <u>United States v. Shipp</u>, 589 F.3d 1084 (10 Cir. 2009)(case where Shipp's conviction for possession of a firearm after a felony conviction carried a 10 year statutory penalty under 18 U.S.C. §924(a)(2), and under the ACCA defendants qualifying as "armed career criminals"

were subject to a mandatory minimum term of 15 years).

In September 2011, the Eleventh Circuit in Page v. United States, Nos. 10-13663, 10-14072, 2011 WL 3925373, at *2 (11 Cir., Sept. 8, 2011) was presented with an argument that the petitioner's below-the-statutory-maximum sentence as a career offender under USSG §4B1.2(a) could not be sustained in light of the 2010 Supreme Court decision in Johnson, because his prior Florida BOLEO convic-tion no longer constituted a "crime of violence." The Eleventh Cir-cuit, however, declined to answer the question in the Certificate of Appeallability, concluding that Page was procedurally barred from raising his sentencing claim in a §2255 motion, because it could have been raised on direct appeal.

In Orso v. United States, No. 10-13609, 2012 WL 130187, at *1-2, n.5 (11 Cir., Jan. 17, 2012) the Court noted that the government had "seemingly conced[ed] that 'actual innocence' can excuse a procedural default in the context of a non-capital sentence if the sentence imposed exceeds the statutory maximum sentence that would have applied absent the error." The Court, however, declined to reach the question, stating "We do not need to decide whether to accept this concession because Orso was not sentenced in excess of the statutory maximum for his crimes." Orso, supra, at n.5 (citing Gilbert v. United States, 640 F.3d 1293, 1306 (2011)).

As noted above, the government has argued in its 10/20/11 Supplemental Response (Cv:DE29) that there has been no manifest injustice shown in Olbel's case, where the sentence imposed "falls squarely within" his statutory sentencing range. The Government also has argued that the court could impose the same sentence upon Olbel, even if his guideline range were to be recalculated without the Career Offender enhancement. In support of these arguments the Government cites the Eighth Circuit's 7/12/11 opinion in Sun Bear v. United States, 644 F.3d 700 (8 Cir.2011)(holding that "ordinary questions of guideline interpretation falling short of the 'miscar-

riage of justice' standard do not present a proper 2255 claim")
(quoting <u>Auman v. United States</u>, 67 F.3d 157, 161 (8 Cir. 1995)).
The Government also cites <u>Burke v. United States</u>, 152 F.3d 1329,
1331-32 (11 Cir.1998)(finding that a claim of a sentencing court's
misapplication of a Guidelines enhancement resulting in a higher
than otherwise applicable guidelines range was not cognizable; and
stating: "constitutional claims can be raised on collateral review
only when the alleged error constitutes a 'fundamental defect which
inherently results in a complete miscarriage of justice [or] an
omission inconsistent with the rudimentary demands of fair
procedure.'") (quoting <u>Reed. v. Farley</u>, 512 U.S. 339, 348 (1994)).

In light of <u>Gilbert</u> II and <u>McKay</u>, it is clear that a claim
that Olbel is "actually innocent" of his career offender sentencing
enhancement will not stand. It is also clear, under <u>Kerr</u>, <u>Lynn</u>, and
<u>Coley</u>, that Olbel's failure to raise his <u>Johnson</u>-based claim in
2007 in his Brief of Appellant on Direct Appeal, even though
<u>Johnson</u> would not be decided until nearly 2½ years later in March
2010, does not foreclose the application of a procedural bar to the
claim, where the Eleventh Circuit has reasoned that even though the
Supreme Court precedent on which the new §2255 claim is based did
not exist, the movant arguably could have anticipated the basis for
the claim and could have raised it himself on appeal, as did
defendant/appellant/petitioner Curtis Darnell Johnson in his case.

The question, then, is whether in Movant Olbel's case [where
as discussed below, his sentence even without the career offender
enhancement would apparently not exceed the applicable statutory
maximum], the circumstances are such that his procedural default
[not raising his claim on direct appeal] should be excused based on
a finding of miscarriage of justice, and if so whether the Court
should revisit Olbel's case and grant him a hearing for re-senten-
cing. The Eleventh Circuit's decisions in <u>Hunter</u>, <u>Page</u>, and <u>Orso</u>
suggest that imposition of an enhanced sentence that exceeds a sta-
tutory maximum becomes a matter of constitutional concern if the

enhancement later falls away as a result of change in the law. Those cases, however, have not squarely held that a below-the-statutory-maximum/career-offender-driven sentence cannot be the subject of collateral review, leading to a grant of resentencing on the basis of "miscarriage of justice," if the sentence was based on a prior conviction for a crime that under new Supreme Court authority does not qualify as a predicate offense for Career Offender enhancement [e.g., a state BOLEO conviction, as in <u>Johnson</u>].

In regard to that question, the Government relies on persuasive Eighth Circuit authority, <u>Sun Bear</u>, <u>supra</u>, for the proposition that a miscarriage of justice should not be found in Olbel's case.

In <u>Sun Bear</u>, 644 F.3d at 704-705, the Eighth Circuit, sitting *en banc*, reversed the Court's earlier panel decision, <u>Sun Bear v. United States</u>, 611 F.3d 925 (8 Cir. 2010) in which the Court had concluded that the miscarriage of justice exception applied because Sun Bear's claim was "based on post-conviction change in the law that renders unlawful the district court's sentencing determination." <u>Sun Bear</u>, <u>supra</u>, 644 F.3d at 705. The Court, *en banc*, noted absence of precedent in which a guidelines error was held to be a miscarriage of justice; and further noting that "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority," found that "Sun Bear's sentence is well within the statutory maxiumum authorized for the offense of second-degree murder...and in addition within the initial guidelines range of 292-365 months." <u>Id.</u>, 644 F.3d at 705. The <u>Sun Bear</u> Court, *en banc*, also noted that unlike cases such as <u>Shipp</u>, in which the the ACCA had increased the defendant's statutory maximum sentence, in Sun Bear's case, the same 360-month sentence could be reimposed if Sun Bear were granted the §2255 relief he requested; and thus, no miscarriage of justice was at issue. <u>Id.</u>, at 705.

Meanwhile, contrary to the Eighth Circuit ruling in <u>Sun Bear</u>, the Seventh Circuit sitting *en banc* in <u>Narvaez v. United States</u>,

No. 09-2919, ___ F.3d ___, 2011 WL 6382106, at *5-6 (7 Cir., Decided
June 3, 2011, Amended Dec. 6, 2011),[5] determined that an initial
§2255 motion challenging a Career Offender sentence not only was
cognizable under §2255, but that the circumstances of Narvaez's
case, i.e. the alleged error (a misapplication of the then manda-
tory §4B1.1 career offender categorization to him) constituted a
"miscarriage of justice." Id., at *5-6. In 2003 Narvaez had pled
guilty to bank robbery. He was designated a Career Offender under
§4B1.1 based on two prior escape convictions, resulting in enhance-
ment of his sentencing range from 100-125 months to 151-188
months,[6] and received a 170 month sentence. Later, he filed a §2255
motion, claiming his Career Offender status was illegal in light of
Begay, and Chambers v. United States, 555 U.S. 122 (2009);[7] the
district court denied relief, finding Begay and Chambers were not
retroactive on collateral review, but granted a Certificate of
Appealability ("COA"). The government conceded that Begay and
Chambers applied retroactively, and that Narvaez's prior escape
convictions did not constitute crimes of violence under the Career
Offender guideline, but nonetheless argued that he did not satisfy
the requirement for the granting of a COA because the Certificate
did not identify a substantial constitutional question, and argued
that Narvaez was entitled to no relief because no miscarriage of
justice had occurred. The Appellate Court concluded that Begay and
Chambers applied retroactively, and that because Narvaez's Career
Offender sentence was improper, his period of incarceration exceed-
ed that permitted by law and constituted a miscarriage of justice.

---

[5]     The Narvaez decision, Decided June 3, 2011, was "Amended" December
6, 2011. Regarding the Amendment, the Narvaez opinion as published on Westlaw
contains a footnote corresponding to the December 6, 2011 date, indicating that
"This opinion was released initially in typescript form."

[6]     As a Career Offender, Narvaez was assigned Offense Level 32, and with
a 3-level reducation under §3E1.1 his adjusted Offense Level was 29. Under then
mandatory Guidelines his Offense Level 29 paired with Criminal History Category
VI resulted in a guidelines range of 151-188 months.

[7]     In Chambers, the Supreme Court held that an Illinois conviction for
escape, better described as failure to report, did not qualify as violent felony.

Noting that the government had invited it to consider the Eleventh Circuit <u>Gilbert</u> II opinion, the <u>Narvaez</u> Court distinguish-ed <u>Gilbert</u> II, stating: "the Eleventh Circuit in *Gilbert*, however, explicitly did not address the issue in this case, namely whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an *initial* collateral attack. The Eleventh Circuit concluded that that it had 'no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence.' <u>Id</u>. at 1306." <u>Narvaez</u>, <u>supra</u>, at *6, n.14.

The <u>Narvaez</u> Court further observed that the government had invited its attention to the decision in <u>Sun Bear</u>, <u>supra</u>, 644 F.3d 700. So noting, the <u>Narvaez</u> Court distinguished <u>Sun Bear</u>, stating: "Unlike the defendant in *Sun Bear*, Mr. Narvaez's sentence was not within the sentencing range had the career offender status not been applied." <u>Narvaez</u>, <u>supra</u>, at *6, n.14. The Court added: "Neverthe-less, to the extent tension between this opinion and the Eighth Circuit's reasoning in *Sun Bear* exists, we respectfully disagree with our collegues on the Eight Circuit." <u>Narvaez</u>, <u>supra</u>, at n.14.

In <u>Narvaez</u>, the Seventh Circuit, sitting *en banc* noted the government's argument and reasoning. [The government argued that because Movant Narvaez's 170-month sentence was actually within the authorized 20-year statutory maximum for his crime, and because Mr. Narvaez would be exposed to the full range of punishment authorized by Congress for his crime at resentencing, and would remain eligible for the identical 170-month sentence under the advisory guidelines, his claim did not present a fundamental defect]. The Court rejected the government's position and reasoning, stating:

> We cannot accept this argument. The fact that Mr. Narvaez's sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred. The imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise

similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence. His designation as a career offender simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation. The sentencing court's misapplication of the then - mandatory § 4B1.1 career offender categorization in Mr. Narvaez's case was the lodestar to its guidelines calculation. It placed him in a very special status for the calculation of his final sentence solely because the court ruled that he was a career offender and that the corresponding guidelines required such a status. Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of his initial sentencing, Mr. Narvaez was sentenced based upon the equivalent of a nonexistent offense. As the Supreme Court put it in *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980), to assume that the same sentence would have been imposed in the absence of the career offender provision is "frail conjecture" that evinces in itself "an arbitrary disregard of the petitioner's right to liberty." This error clearly constitutes a miscarriage of justice. The Government is correct that Mr. Narvaez does not have an absolute right to a lower sentence. Nevertheless, he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.

  The career offender status illegally increased Mr. Narvaez's sentence approximately five years beyond that authorized by the sentencing scheme. Therefore, Mr. Narvaez's claim goes to the fundamental legality of his sentence and asserts an error that constitutes a miscarriage of justice, entitling him to relief.

<u>Narvaez</u>, <u>supra</u>, __ F.3d __, 2011 WL 6382106, at *5-6.

  While Eleventh Circuit and Supreme Court precedent make clear that the miscarriage of justice exception is very narrowly and closely tied to a defendant's "actual innocence," and in <u>Gilbert</u> II the Eleventh Circuit held that an individual cannot be actually

innocent of being a career offender, it is noted that the Eleventh
Circuit in <u>Page</u> did not decide the question whether or not the
petitioner's below-the-statutory-maximum sentence as a career
offender under USSG §4B1.2(a) could be sustained in light of the
2010 Supreme Court decision in <u>Johnson v. United States</u>, because
his prior Florida BOLEO conviction no longer constituted a "crime
of violence." The <u>Page</u> Court declined to reach the question,
concluding that the claim was procedurally barred because it had
not been raised on direct appeal.

The Government's Supplemental Response in Olbel's case cites
<u>Burke v. United States</u> for the proposition that "nonconstitutional
claims can be rasied on collateral review only when the alleged
error constitutes a 'fundamental defect which inherently results in
a complete miscarriage of justice [or] an omission inconsistent
with the rudimentary demands of fair procedure."

The Eleventh Circuit, in <u>Burke</u>, found that the petitioner-ap-
pellant's claim fell short of indicating a "complete miscarriage of
justice." <u>Burke</u>, <u>supra</u> 152 F.3d at 1332 (holding that "a claim that
the sentence imposed is contrary to a post-sentencing clarifying
amendment is a non-constitutional issue that does not provide a
basis for collateral relief in the absence of a complete miscar-
riage of justice.").[8] The <u>Burke</u> opinion suggests that a "substan-
tive change" to an individual's advisory guidelines sentence could

---

[8]      Burke's claim involved what the Court found to be a "clarifying
amendment" (Amendment 347 which clarified the operation of §3C1.1) rather than
a "substantive amendment." The Court found that "[c]larifying amendments do not
effect a substantive change, but provide persuasive evidence of how the
Sentencing Commission originally envisioned application of the relevant
guideline." The Court continued, stating that: "[i]nsofar as amendment 347 is a
clarifying amendment effecting no change in the substantive law, Burke was
afforded the opportunity to raise the impropriety of the obstruction-of-justice
enhancement at his original sentencing and on direct appeal. Considering all of
the circumstances, we cannot say that the alleged mis-application of the
sentencing guidelines in this case was fundamentally unfair or that it
constituted a miscarriage of justice sufficient to form the basis for collateral
relief." <u>Burke</u>, 152 F.3d at 1332.

constitute a miscarriage of justice or omission inconsistent with rudimentary demands of fair procedure; but the Court stopped short of finding that actual innocence was required for a §2255 motion to be cognizable.

Upon consideration of the aforementioned Eighth and Seventh Circuit opinions [Sun Bear and Narvaez, respectively, which are not binding on this court, but may be considered as persuasive authority], the undersigned finds Narvaez to be the more persuasive, and to be more factually on point that Sun Bear.

In the wake of Johnson, Movant Olbel, without his prior BOLEO conviction, cannot properly be deemed a Career Offender for reasons discussed in the prior Report, in the absence of Shepard Evidence demonstrating that his BOLEO convictuion qualified as a violent felony and therefore a predicate offense under USSG §4B1.1(a). As discussed below, it cannot be denied that Olbel's Career Offender classification had a significant effect on his sentence.

Assuming Olbel's "Battery on a LEO" conviction (state Case 02-18089-CF10A) does not [in light of Johnson] qualify as a predicate offense under USSG §4B1.1(a), and if he were left with only one prior qualifying conviction (possession with intent to distribute conviction from Case 03-18045-CF10A, listed at PSI ¶36) and he therefore did not qualify as a "Career Offender," then under the 2006 Guidelines Manual used for his 8/28/07 sentencing[9] his Adjusted Offense Level would not be subject to enhancement from 28 to a Total Offense Level of 37 under §§4B1.1(a) and (b). See PSI ¶¶13-21).[10] As further discussed below, it appears his resulting

---

[9] The Guidelines Manual used for preparation of Olbel's PSI was the Manual which incorporated Amendments effective November 1, 2006 and earlier.

[10] As a Career Offender facing a potential statutory maximum of Life imprisonment pursuant to 21 U.S.C. §841(b)(1)(C) because of the Crack cocaine quantity attributed to him [16.2 grams], and having a prior felony drug conviction, Olbel's Offense Level scored out at 37 because of the Career Offender pro-

advisory sentencing guidelines range [previously calculated at 360 months to Life, see PSI ¶81] would turn out to be less than previously determined.[11] If the 2006 Guidelines Manual were used, it appears that his Offense Level would fall from 37 to 28. (See PSI ¶¶8, and 13-28). This is because, without the Career Offender enhancement, Olbel's Base Offense level would have been 26, based on stipulated drug quantities [2 grams of cannabis, 0.3 grams of powder cocaine, and 16.2 grams of cocaine base or Crack, resulting in a total Marijuana Equivalent of at least 100 kilograms, but less than 400 kilograms] see PSI ¶¶8 and 13).[12] That Base Offense Level of 26, along with a 2-level increase under USSG §2D1.1(b)(1) because a dangerous weapon (including a firearm) was possessed (see

---

vision at USSG 4B1.1(b)(A) of the 2006 Guidelines Manual assigning Offense Level 37 to those facing a Life Maximum [as opposed to lesser Offense Levels corresponding with lesser statutory maximum sentence: e.g. Offense Level 34 under USSG 4B1.1(b)(B) corresponding to maximum sentences of "25 years or more;" or Offense Level 32 under USSG 4B1.1(b)(C) corresponding to maximum sentences of "20 years or more, but less than 20 years," etc.]. Use of the Career Offender "Offense Statutory Maximum/Offense Level" Table under USSG §4B1.1(b) would fall away if Olbel were no longer deemed a Career Offender, and calculation of his Offense Level would be controlled by operation of USSG §2D1.1 and Tables listed therein.

[11]     It is noted that, apart from Olbel's 2/24/04 conviction in Broward Case 03-18045-CF10A for Possession with intent to sell (PSI ¶36), no other prior drug convictions listed for Olbel in his PSI qualify as a "controlled substance offense" for purposes of Career Offender Status. (Olbel's prior adult convictions for simple possession in state cases listed at PSI ¶¶28, 30, 33 and 35 do not suffice. This is because, for purposes of determining Career Offender Status under USSG §4B1.1, "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." See Definition, under USSG §4B1.2(b).

[12]     Using the Drug Equivalency Tables under §2D1.1, the Marijuana Equivalents and his Base Offense level would have been as follow. *2 grams Cannabis* = 2 Grams Marijuana Equivalent [where 1 gram *Cannabis* = 1 gram Marihuana]. *0.3 grams Powder Cocaine* = 60 Grams Marijuana Equivalent [where 1 gram Cocaine = 200 grams Marihuana]. *16.2 grams Cocaine Base/Crack* = 259.2 kilograms Marihuana Equivalent [based on 16 Kg of marijuana/gram of crack]. All totaled, the three stipulated drug quantities resulted in a total Equivalent of 259.262 Kg of Marihana [a quantity of "at least 100KG but less than 400KG of Marijuana] which under the §2D1.1 "(c) DRUG QUANTITY TABLE" results in Base Offense Level 26.

PSI ¶¶14 and 18), would result in an Adjusted Offense Level of 28.

In this case, Olbel's Offense Level would be paired with his Criminal History Category (Category VI) to determine an advisory sentencing guidelines range.

Even if Olbel were not deemed to be a Career Offender, nothing suggests that his Criminal History Category (previously calculated as Category VI, see PSI ¶¶22-42) would change.[13] This is because, based on his history of prior convictions, Olbel had 12 Criminal History Points (from PSI ¶¶22-39) plus a 2-point enhancement under USSG §4A1.1(e), for a total of 14 Criminal History Points, which on the USSG Chapter Five Sentencing Table converts to Criminal History Category VI. Even if the 1 point assessed in PSI ¶38 were removed, Olbel would still be left with 13 criminal history points which is the bottom threshold for Criminal History Category VI. (See: Guidelines Manual "Sentencing Table;" see PSI and Objections thereto; and see the Sentencing Transcript Cr:DE103).[14]

Undeniably Olbel's Career Offender status greatly impacted his advisory sentencing range, and factors existing for the Court's consideration when structuring the sentence that was imposed.

With the §4B1.1 enhancement [based on the prior BOLEO

---

[13]     One basis for assigning Olbel Category VI [i.e., that "Career Offenders" are automatically assigned Category VI under §4B1.1(b)] would fall away if Olbel's state BOLEO conviction is deemed to no longer be a qualifying predicate offense. (See PSI ¶¶40-42).

[14]     In writing (Cr:DE84, Objections to PSI), and at sentencing (Cr:DE103, T/9-14), Olbel, through counsel challenged the 1 point assessed in PSI ¶38 for a 1/26/2004 conviction for Trespass and Resisting Without Violence, where Olbel had served no jail time, and similar offenses in PSI ¶¶34 and 37 were assessed no points. At sentencing, after discussion between the Court, Defense Counsel, Defendant Olbel, Government Counsel, and a Probation Officer, it was conceded that even without the 1 point from PSI ¶38, Olbel would still have enough Criminal History Points to qualify for Criminal History Category VI (assigned for "13 or more" criminal history points).

conviction (PSI ¶32), and prior conviction for Possession with Intent to Deliver within 200 feet of a Park (PSI ¶36)], Olbel's Career Offender Offense Level of 37 [under §4B1.1(b)(A) of the 2006 Guidelines Manual],[15] paired with his Criminal History Category VI, resulted in an advisory guidelines range of 360 months to Life.

As reflected in the 2007 PSI, Olbel's statutory sentencing ranges were a 10-year mandatory minimum with a Life maximum on Count I, pursuant to 21 U.S.C. §841(b)(1)(B) [for the Possession with Intent to Distribute 5 or more grams of Crack, based on 16.2 grams of cocaine base, and assuming he had at least one prior felony drug offense]; and a 10-year maximum with no mandatory minimum for Count II [Felon in Possession of a Firearm]. As noted, Olbel was sentenced at the bottom of the guidelines to 360 months (or 30 years imprisonment) for the Crack offense [Count 1] and to a concurrent term, at the statutory maximum of 120 months, for the Firearm offense [Count 2].

Without §4B1.1 enhancement (upon removal of the BOLEO conviction), it appears that under the Guidelines applied at his 2007 sentencing, Olbel's Offense Level would have been 28, which paired with Criminal History Category VI would result in a guidelines range of only 140-175 months, significantly below the range of 360-months to Life that was obtained treating him as a Career Offender.

Where, as discussed in this Report supra, and in the Prior Report, it is apparent that Movant Olbel's Career Offender status -- based upon use of his prior BOLEO convicton -- can no longer be sustained in light of the Supreme Court's 2010 decision in Johnson, and where Movant Olbel's sentence that was imposed [360 months/30-years] falls significantly outside [above] the advisory sentencing range that would have resulted under Guidelines without §4B1.1

[15] Under the 2011 Guidelines Manual this provision [referred to in the 2006 Manual as §4B1.1(b)(A)] is now enumerated §4B1.1(b)(1).

enhancement [a 140-175 month range without enhancment; versus the range of 360-Life calculated with enhancement], it is the conclusion of the undersigned that that result is one which constitutes in Olbel's case a miscarriage of justice. Accordingly, it is respectfully recommended that the Court should grant Movant Olbel a hearing for resentencing without classifying him as a Career Offender. *Cf* Narvaez, supra.[16]

1.   **CLAIMS 1 AND 2 FROM MOVANT'S "SUPPLEMENT" (DE#21)**

   a. **Movant's 7th Claim (Claim 1 of the Supplement)**

In his 7th claim, i.e., Claim 1 of his Supplement (DE#21, dated 8/6/11) Olbel argues that, in light of the decision of the United States District Court in Shelton v. Sec'y, Dep't of Corr., 802 F. Supp.2d 1289, 2011 WL 3236040 (M.D.Fla., Jul.27, 2011), his 3 prior state drug convictions, listed in the Government's Section 851

---

[16]     It is noted that recently, in Case 10-81230-Civ-DMM, Walker v. United States, the Honorable Donald M. Middlebrooks, United States District Judge, upon consideration of an initial §2255 Motion to vacate filed by defendant/Movant Walker in Case No. 05-80125-Cr-Middlebrooks [arguing that following Johnson he should no longer be deemed a Career Offender based on his prior Florida BOLEO conviction], granted the Movant §2255 relief in the form of a resentencing without treatment as a Career Offender. As a Career Offender, Walker had a Base Offense Level of 31, which paired with Criminal History Category VI resulted in a guidelines range of 188-235 months; and he faced a minimum of 5 years and maximum of 40 years in prison for violating 21 U.S.C. §841(b)(1)(B). Walker had been sentenced to a term of 188 months, at the bottom of the applicable guidelines range. In Walker, [just as would be the case here for Olbel] a recalculation of the Movant's sentence without §4B1.1 enhancement resulted in a significant reduction in his advisory sentencing guidelines range.  Despite the government's position that Walker was entitled to no relief, in pertinent part because the revised guidelines range would fall below the applicable statutory maximum, Judge Middlebrooks disagreed with the government's argument that there can be no "miscarriage of justice" if the sentence did not exceed the statutory maximum. Judge Middlebrooks, having considered both Sun Bear and Narvaez, found that the elimination of Walker's BOLEO conviction constituted a substantive change that would result in a miscarriage of justice or omission inconsistent with the rudimentary demands of fair procedure if the Court failed to grant Walker's Motion to vacate his sentence [where his un-enhanced revised guidelines range would be significantly below the sentencing range that previously applied due to Career Offender enhancement]. Although the government recommended a new sentence at 60 months, the Court departed upward, and re-sentenced Walker to 84 months, based on §3553 factors. The Government has Appealed. (See Case 10-81230-Civ-DMM, Order Cv:DE26, Stautus Hearing Cv:DE31, Sentencing Hearing Cv:DE31; Case 05-80125-Cr-DMM, Judgment Cr:DE42, Amended Judgment Cr:DE79, Notice of Appeal Cr:DE80).

Notice (Cr:DE48), were rendered "non-existent," and cannot appropriately be used to support enhancement of his federal sentence. Olbel's three prior drug offenses listed in the Government's 6/6/07 §851 Notice (Cr:DE48) were for Broward County convictions: Possession with Intent to Deliver Cocaine in Case 03-18045CF10 (see PSI ¶36); Possession of Cocaine in Case 03-13715CF10 (see PSI ¶35); and Possession of Cocaine in Case 02-18385CF10 (see PSI ¶33).

As discussed supra, based on drug quantities attributed to Olbel in connection with his 2006 federal drug offense, and in connection with his 2007 conviction and sentencing, for purposes of determining Olbel's statutory sentencing range tied to Count 1 [his federal crack cocaine offense involving 16.2 grams of crack/cocaine base], Olbel fell under §841(b)(1)(B) which subjected him to a 10-year minimum and Life maximum because, before commission of his 2006 federal drug offense, he had at least one "prior conviction for a felony drug offense" which had "become final." Without one or more of Olbel's prior state drug convictions [listed in the §851 Notice (Cr:DE48), and in the PSI at ¶¶33, 35 and 36], Olbel under §841(b)(1)(B) would instead have faced a 5-year minimum and 40-year maximum for his federal crack offense, under the statutory scheme in force at the time of his offense, conviction, and sentencing.

In Shelton, on 7/27/11, the U.S. District Court for the Middle District of Florida, when considering a §2254 petition for writ of habeas corpus brought by petitioner Mackle Vincent Shelton, concluded that Florida Statute §893.13, the criminal statute most commonly used in Florida to enforce laws against the manufacture, possession, and sale of illegal drugs, is facially unconstitutional. The court reasoned that the Florida Legislature's 2002 amendment to Florida's Drug Abuse Prevention and Control law, codified at Fla. Stat. §893.101, eliminated any *mens rea* requirement for the drug offenses enumerated in Fla.Stat. §893.13, thus rendering these offenses strict liability offenses. The court then held that §893.13 could not pass constitutional muster as a strict liability statute

because it subjects its offenders to "harsh penalties," "gravely besmirches an individual's reputation," and "punishes otherwise innocuous conduct without proof of knowledge or other criminal intent," which violates the Due Process Clause of the United States Constitution. <u>Shelton</u>, <u>supra</u>, 2011 WL 3236040, at *9.[17]

No less than 4 unanimous Florida District Courts of Appeal have rejected <u>Shelton</u>, and have held that Section 893.13, as amend-ed by Section 893.101, Florida Statutes (2002), is constitutional. See <u>Adams v. State</u>, 76 So.3d 367 (Fla. 3 Dist., 2011); <u>Maestas v. State</u>, 76 So.3d 991, 2011 WL 5964337 (Fla. 4.Dist., Nov. 30, 2011); <u>Little v. State</u>, 77 So.3d 722, 2011 WL 5554812 (Fla. 3 Dist., Nov. 16, 2011); <u>Holcy v. State</u>, --- So.3d ----, 2011 WL 5299328 (Fla. 5 Dist., Nov. 1, 2011); <u>Flagg v. State</u>, 74 So.3d 138 (Fla. 1 Dist., Oct. 14, 2011). As observed on December 21, 2011 by the Honorable Alan R. Schwartz, Chief Judge, in <u>Adams</u>, <u>supra</u>, at footnote 1, the only District Court of Appeal faced with the question, which had not considered the merits of <u>Shelton</u>, was the Florida 2nd DCA which [on September 28, 2011], had "passed through" the issue to the Florida Supreme Court. See <u>State v. Adkins</u>, 71 So.3d 184 (Fla. 2d DCA 2011) (Certifying as requiring resolution by the Florida Supreme Court, an Order entered by the Honorable Scott M. Brownell,

---

[17] About 3 months later, the Middle District, in <u>United States v. Bunton</u>, No. 8:10-cr-327-T-30EAJ, 2011 WL 5080307 (M.D. Fla., Oct. 26, 2011), concluded in what it deemed a factually distinguishable scenario, that the 2002 amendment did not result in a facially unconstitutional statute because even without a *mens rea* requirement, it still satisfies due process. The Court reasoned that while the statute has no element requiring guilty knowledge of the illicit nature of the substance, the State still must prove that a defendant charged with a drug offense enumerated in Fla.Stat. §893.13 had knowledge of his possession of the substance. In light of this surviving element of knowledge and upon consideration of Supreme Court precedent regarding the constitutionality of public welfare offenses. The Court held that Florida's Drug Abuse Prevention and Control law comports with the Due Process Clause of the United States Constitution. [In doing so, the <u>Bunton</u> court observed that in Shelton's case the State did not have to prove any element of knowledge, and thus, <u>Shelton</u> was distinguishable to the extent that the court there was dealing with a violation of section 893.13 that, according to the jury instructions then in use, did not require the State to prove anything beyond defendant's delivery of an illegal substance].

Circuit Judge, granting motions to dismiss by 42 defendants in 46 separate drug prosecutions in Manatee County, on the ground that Fla.Stat. §893.13 (2002-2011) is unconstitutional).

As mentioned in footnote 2 of <u>this</u> Report and related text, the Movant filed a "Supplement" (DE#35) asking the Court to stay this §2255 proceeding indefinitely, until the Florida Supreme Court considers the question certified by the 2nd DCA in <u>Adkins</u>. Research shows that the Supreme Court scheduled briefing for November 2011, and oral argument in December 2011. <u>State v. Adkins</u>, No. SC11-1878, 71 So.3d 117, 2011 WL 4925888, at *1 (Fla., Oct. 12, 2011).

The request for an indefinite stay should be denied, because, for reasons discussed below, Olbel is not entitled to relief on his 7th and 8th claims [Claims 1 and 2 of his "Supplement" (Cv:DE21)].

The Government, in part, argues that Olbel's <u>Shelton</u> claim is untimely, and does not relate back to his initial filing. The government, however, in relevant part also raises other arguments that are dispositive of Olbel's <u>Shelton</u> claims at this time, chief among which is the argument that, given the circumstances of Olbel's case, and the posture of the <u>Shelton</u> question in the Florida Courts, it is inappropriate for Olbel to collaterally attack in this §2255 proceeding his underlying State court drug convictions which were listed in the government's §851 Notice.

When a federal court is determining whether a state conviction qualifies as a predicate drug offense for enhancement purposes, if the state supreme court has not definitively determined a point of state law, the federal court is bound to adhere to decisions of the state's intermediate courts, absent some indication that the state supreme court would hold otherwise. <u>Williams v. Singletary</u>, 78 F.3d 1510, 1515 (11 Cir.1996) (§2254 case). The Eleventh Circuit has held that, as a general rule, it does not allow a defendant to collaterally attack prior convictions being used to enhance his

sentence in the sentencing proceeding. See United States v. Watson, No. 11-13915, 2012 WL 669839, at *1 (11 Cir., Mar. 1, 2012) (appeal from life sentence after pleading guilty to conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(ii), and 846)); United States v. Jackson, 57 F.3d 1012, 1018 (11 Cir.1995) (concerning challenge to enhancement under Armed Career Criminal Act ("ACCA")). The Eleventh Circuit, in Watson, supra, at *1, noted that in 1993 it had held in United States v. Roman, 989 F.2d 1117 (11 Cir.1993)(en banc ), that if the defendant adduces evidence sufficient to demonstrate that the conviction used to enhance his sentence is "presumptively void," the Constitution requires the sentencing court to review the earlier conviction before taking it into account. Watson, at *1 (citing Roman at at 1119-20). The Court, however, has suggested that presumptively void cases "are small in number and are perhaps limited to uncounseled convictions." Watson, supra, at *1 (citing Roman, at 1120). In that regard, the Supreme Court has held that a federal criminal defendant cannot challenge his prior state convictions which are the underlying basis to enhance his sentence, absent a showing that the state conviction was obtained in violation of the right to counsel. Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); Johnson v. United States, 544 U.S. 295, 303 (2005).][18]

The defendant has the burden of proving that a prior conviction is constitutionally invalid. Watson, at *1; United States v. Cooper, 203 F.3d 1279, 1287 (11 Cir.2000); 21 U.S.C. §851(c)(2).

Olbel has not shown that his prior state convictions listed in the §851 Notice were convictions in uncounseled cases. Moreover, in light of the fact that the Florida Supreme Court has not resolved the question certified by the Florida 2nd DCA in Adkins, and in

---

[18]    The 2010 Supreme Court decision in Johnson v. U.S., at 544 U.S. 295, was brought by Petitioner Robert Johnson.

further light of the fact that no less than 4 Florida Courts of Appeal [1st, 3rd, 4th, and 5th DCAs] have rejected <u>Shelton</u>, and have held <u>Fla.Stat.</u> §893.13 to be constitutional, the Movant Olbel cannot show that his prior state convictions listed in the §851 Notice (Cr:DE48) i.e., those listed in PSI ¶¶33, 35 and 36, are "presumptively void." Absent a showing that they are, review of Olbel's prior state drug convictions must be through habeas corpus proceedings. <u>See</u> <u>Watson</u>, at *1; <u>Roman</u>, <u>supra</u>, at 1120.

In these circumstances, Olbel is not entitled to relief on his 7th claim [i.e., the 1st claim of his Supplement Cv:DE21]. He should be required to return to state court, and be successful there, having his state drug convictions overturned, before coming to this Court and requesting any relief on this claim.

### b. **Movant's 8th Claim (Claim 2 of the Supplement)**

Based on the fact that the U.S. District Court for the Middle District of Florida issued its 7/27/11 opinion in <u>Shelton</u>, (concluding that <u>Fla.Stat.</u> §893.13 was unconstitutional), Movant Olbel, in his last claim, asserts that his attorney on direct appeal was ineffective for not challenging the §851 Notice in his case, based on a claim that §893.13 is is unconstitutional on its face. Olbel's ineffective assistance claim (Claim 2 of his Supplement Cv:DE21) is subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to the movant, and is highly deferential.[19] The

---

[19] For a movant like Olbel to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his attorney's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Chandler v. United States</u>, 218 F.3d 1305, 1312-13 (11 Cir. 2000)(<i>en banc</i>), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001); <u>Strickland</u>, <u>supra</u>, 466 U.S. at 690-91. The standard is highly deferential, <u>see</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1418-1420, 173 L.Ed.2d 251 (2009).

In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all sig-

essence of Olbel's ineffective assistance claim is that his
appellate counsel should have anticipated the ruling in <u>Shelton</u>.

---

nificant decisions in the exercise of reasonable professional judgment.'"
<u>Chandler</u>, <u>supra</u>, 218 F.3d 1314 (<u>quoting</u> <u>Strickland</u>, <u>supra</u>, 466 U.S. at 689-90.
The courts "are not interested in grading lawyers' performances;" but rather,
"are interested in whether the adversarial process at trial...worked adequately."
<u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11 Cir. 1994)(quotation marks omitted). To be
unreasonable, the performance must be such that "no competent counsel would have
taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>,
257 F.3d 1194, 1216 (11 Cir. 2001)(emphasis omitted). The Eleventh Circuit has
held that courts will not "second-guess counsel's strategy." <u>Chandler</u>, <u>supra</u>, at
1314, n.14. Strategic choices, even those "made after less than complete
investigation," are evaluated for their reasonableness and "counsel's reliance
on particular lines of defense to the exclusion of others -- whether or not he
investigated those other defenses--is a matter of strategy and is not ineffective
unless the petitioner can prove the chosen course, in itself, was unreasonable."
<u>Chandler</u>, at 1318 (<u>quoting</u> <u>Strickland</u>, at 690-91). In other words, "[e]ven if
many reasonable lawyers would not have done as defense counsel did at trial, no
relief can be granted on ineffectiveness grounds unless it is shown that no rea-
sonable lawyer, in the circumstances, would have done so." <u>Rogers</u>, 13 F.3d at
386. Under the second prong of the <u>Strickland</u> test, a petitioner can be said to
have been prejudiced by counsel's performance only if there was "a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable probability is probability
sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

    Moreover, counsel has no duty to raise defenses which have little or no
chance of success. <u>Knowles</u>, <u>supra</u>, 129 S.Ct. at 1422 (the law does not require
counsel to raise every available non-frivolous defense); <u>see</u>, <u>Chandler</u>, <u>supra</u>,
240 F.3d at 917 (counsel not ineffective for failing to raise <u>non-meritorious</u>
objection). Similarly, it is well settled that appellate counsel is not required
to raise meritless issues on appeal. <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir.
1990); <u>Matire v. Wainwright</u>, 811 F.2d 1430 (11 Cir.1987). In appellate proceed-
ings, a decision to raise select issues while omitting others is presumed to have
been based on reasonable professional judgment. This is because effective appel-
late advocates are expected to winnow out weaker arguments, even when they might
be meritorious, appellate counsel does not perform deficiently merely by failing
to raise every non-frivolous issue on appeal, provided that the strategic deci-
sion not to raise a particular issue was reasonable under the circumstances.
<u>Jones v. Barnes</u>, 463 U.S. 745, 753-54 (1983); <u>Heath v. Jones</u>, 941 F.2d 1126,
1130-31 (11 Cir.1991). Rather, "effective advocates 'winnow out' weaker arguments
even though the weaker arguments may be meritorious." <u>Heath</u>, <u>supra</u>, at 1131. When
appellate counsel reviews the entire record, thinks about various claims, and
then chooses to pursue only certain issues on appeal, counsel has not rendered
ineffective assistance. <u>Id</u>. Although a non-appealed issue might have been suc-
cessful if it had been raised, appellate advocacy must be "judged in its entire-
ty." <u>Id</u>. To determine prejudice in the context of appellate counsel's effective-
ness, the Court must review the merits of the neglected claim or claims. <u>Heath</u>,
<u>supra</u>, 941 F.2d at 1132. Failure to raise a claim will not be found prejudicial
unless it would have a reasonable probability of success on appeal. <u>Id</u>.

It remains an open question what decision will be reached by the Florida Supreme Court, in regard to the certification from the Florida 2nd DCA in <u>Adkins</u>. As noted by the Florida 1st DCA in <u>Flagg v. State</u>, <u>supra</u>, the <u>Shelton</u> decision is not binding on the Florida Courts. <u>Flagg</u>, <u>supra</u>, 74 So.3d at 140, n.2 (citing <u>State v. Dwyer</u>, 332 So.2d 333, 335 (Fla.1976) ("Even though lower federal court rulings may be in some instances persuasive, such rulings are not binding on state courts")).

The Florida 1st DCA in <u>Flagg</u>, also noted that it and other Florida Appellate Courts had repeatedly rejected an argument that <u>Fla.Stat.</u> §893.13 is unconstitutional because the *mens rea* requirement in the statute was eliminated by §893.101. <u>Flagg</u>, <u>supra</u>, 74 So.3d at 140 (citing <u>Williams v. State</u>, 45 So.3d 14, 16 (Fla. 1st DCA 2010) (citing cases), rev. denied, 53 So.3d 1022 (Fla.2011);[20] <u>Johnson v. State</u>, 37 So.3d 975 (Fla. 1st DCA 2010), rev. denied, 51 So.3d 465 (Fla.2010); <u>Wright v. State</u>, 920 So.2d 21 (Fla. 4th DCA 2005), rev. denied, 915 So.2d 1198 (Fla.2005)). The Court in <u>Flagg</u> declined to "recede from our settled precedent..." based on the decision in <u>Shelton</u>.

In light of the existence of prior precedent, holding that <u>Fla.Stat.</u> §893.13 had not been rendered unconstitutional, it is apparent that the Movant Olbel's appellate counsel, could not be said to have been ineffective in 2007, for failing to challenge the statute as being unconstitutional, or for failing to anticipate that the U.S. District Court for the Middle District of Florida would render its decision in <u>Shelton</u>, in July 2011, holding for reasons stated therein that §893.13 is constitutionally infirm.

---

[20]     In <u>Williams</u>, <u>supra</u>, 45 So.3d at 16, the Florida 1st DCA noted that its "sister courts," the 3rd DCA, 4th DCA, and 2nd DCA had rejected the same claim predicated on §893.101 having rendered §893.13 unconstitutional. <u>Williams</u>, 45 So.3d at 16 (citing <u>Taylor v. State</u>, 929 So.2d 665 (Fla. 3d DCA 2006), rev. denied, 952 So.2d 1191 (Fla.2007); <u>Wright v. State</u>, 920 So.2d 21, 25 (Fla. 4th DCA 2005), rev. denied, 915 So.2d 1198 (Fla.2005); <u>Burnette v. State</u>, 901 So.2d 925, 927-28 (Fla. 2d DCA 2005)).

Even if, assuming *arguendo*, <u>Shelton</u> were deemed to represent a change in the law, here, the Movant Olbel's appellate counsel cannot be deemed ineffective for failing to foresee <u>Shelton</u> or argue that Fla.Stat. §893.13 is constitutionally infirm. An attorney's failure to anticipate change in the law does not constitute ineffective assistance. See <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994)("Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop"); <u>Davis v. Singletary</u>, 119 F.3d 1471, 1476 (11 Cir.1997)("[i]t was not professionally deficient for [counsel] to fail to anticipate that the law in Florida would be changed in the future to bar the admission of hypnotically induced testimony."); <u>Thompson v. Wainwright</u>, 787 F.2d 1447, 1459 n. 8 (11 Cir.1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law"). Moreover, that rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it. See <u>Pitts v. Cook</u>, 923 F.2d 1568, 1572-74 (11 Cir.1991)(holding that even though a claim based upon the 1986 <u>Batson</u> decision was "reasonably available" to counsel at the time of the 1985 trial, failure to anticipate the <u>Batson</u> decision and raise that claim was not ineffective assistance of counsel).

Under the circumstances, Movant Olbel cannot demonstrate that the representation provided by his appellate attorney fell below the standard of reasonableness required under <u>Strickland v. Washington</u> and its progeny; and Olbel is entitled to no relief on this last claim of his Motion to vacate, as amended and supplemented.

### III      <u>CONCLUSION</u>

For the above-stated reasons it is recommended, that:

1.    The Movant's Motion for an indefinite stay of this §2255

proceeding, incorporated in his Supplement to Second Motion for Extension of Time (Cv:DE35), be denied;

2.    The Motion to Vacate (Cv:DE1, as amended by Cv:DE15, and supplemented by Cv:DE21) be granted, in part, solely on Ground 3 of the Amendment Cv:DE15, to the extent that the Movant's sentence as a Career Offender be vacated, and a new sentencing hearing be held;

3.    Relief be denied as to all other claims of the Motion to Vacate, as amended and supplemented (Cv:DEs 1, 15 and 21); and

4.    This Case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.


Dated: March 21st, 2012.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   Johnny Olbel, Pro Se
      Reg. No. 77257-004
      Coleman II -USP
      United States Penitentiary
      Inmate Mail/Parcels
      P.O. Box 1034
      Coleman, FL 33521

      Jennifer C. Millien, AUSA
      United States Attorney's Office
      500 S. Australian Ave., Suite 400
      West Palm Beach, FL 33401

      Anne Ruth Schultz, AUSA
      United States Attorney's Office
      99 NE 4 Street
      Miami, FL 33132